## ENGERAN v. CONSOLIDATED COMPANIES, Inc.

## No. 1102.

Court of Appeal of Louisiana. First Circuit.

April 17, 1933.

Brumby & Bauer, of Franklin, for appellant.

Jas. R. Parkerson, of Franklin, for appellee.

MOUTON, Judge.

In December, 1930, suit was brought by the defendant, Consolidated Companies, against Engeran Bros. et al., in Terrebonne parish; plaintiff, Joseph Engeran, being named as a defendant therein, then a resident of the parish of St. Mary.

Judgment was rendered by default in favor of the Consolidated Companies against Engeran Bros. et al., and individually against Joseph Engeran, plaintiff herein, who is suing in this litigation to have the judgment so rendered against him annulled and set aside.

The judgment was annulled and avoided by the district judge, from which defendant, the Consolidated Companies, prosecutes this appeal.

Code Practice, art. 607, provides for the annulment of such a judgment when it appears that it has been obtained through fraud or other ill practices, by bribing the judge or the witnesses, or by producing forged documents, etc. The causes enumerated in the article are merely illustrative, as it is well settled that the remedy for the annulment is not restrictive under the provisions of that article. Norris v. Fristoe, 3 La. Ann. 646; Chinn v. First Municipality of City of New Orleans, 1 Rob. 523; Succession of Gilmore, 157 La. 130, 102 So. 94.

In passing on this question in the case of Norris v. Fristoe, Adm'r, 3 La. Ann. 646, the court said that the complainant must show that it would be against good conscience to execute the judgment, and that the plaintiff could not have availed himself of the matter in the former litigation or was prevented by fraud or accident from so doing.

In the case of City of New Orleans v. Le Bourgeois et al., 50 La. Ann. 591, 23 So. 542, the court expressed itself, as follows: "Our courts have not hesitated to afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable"—citing Norris v. Fristoe, 3 La. Ann. 646; Chinn v. First Municipality of City of New Orleans, 1 Rob. 523; Swain v. Sampson, 6 La. Ann. 799.

In one of the latest opinions on the subject, Succession of Gilmore, 157 La. 130, 102 So. 94, 95, the court took occasion to say this, "Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character," thus giving its approval to the doctrine announced in the case of Chinn v. First Municipality of City of New Orleans, 1 Rob. 523, one of our earliest decisions on this question.

■ The proof shows that P. J. Engeran, in May, 1920, sold a lot of ground with the entire business, styled Pelican Oyster & Fish Company, to Joseph Engeran, plaintiff herein, and Francis Parr, situated in the city of Houma; that in the month of March, 1924, Francis Parr, copurchaser with plaintiff, sold all of his interest in that business and property to plaintiff, who, in August, 1924, a few months after he had become the owner of the entire business and property, sold all that he had acquired to P. J. Engeran. These sales were by authentic act passed before Calvin Wurzlow, notary public, and were all duly recorded in Terrebonne parish.

As far as it is disclosed by the public records, it clearly appears that plaintiff, Joseph Engeran, in August, 1924, in the last transfer between the parties, sold by authentic act to P. J. Engeran, the original vendor, the entire business and property he had acquired through P. J. Engeran and Francis Parr, his copurchaser, and there is not in the records the slightest indication that plaintiff had any interest in the business or property transferred by him to P. J. Engeran.

The testimony of P. J. Engeran and Joseph Engeran, plaintiff, is in accord with the record, as they both say that plaintiff was not a partner in the business of the Engeran Bros., which was exclusively that of P. J. Engeran, who had styled his business as Engeran Bros., merely intending a trade-name.

The proof is that plaintiff was living in the parish of St. Mary, and there is nothing to indicate that he was connected, actively or passively, with the business of Engeran Bros., which was operating in the city of Houma, under that trade-name, but belonged solely to P. J. Engeran. The debt for which the Consolidated Companies recovered judgment by default was incurred by the Engeran Bros. owned solely by P. J. Engeran, of which plaintiff was not a partner and in which he had no business interest. He was living in the parish of St. Mary, was not obligated for the debt as partner or otherwise, and was not legally liable therefor.

When the suit was brought against him by the Consolidated Companies, he employed Mr. Calvin Wurzlow of the Houma bar to defend him.

Mr. Wurzlow testifies that he met Mr. Harris Gagne, also of the Houma bar, said he had noticed he had filed suit against Engeran Bros., for the Consolidated Companies in which Joseph Engeran was included as a defendant, and told him that he was not a member of that firm; that Mr. Gagne admitted he was right and that he would dismiss Mr. Wurzlow's client from the proceedings. He further testifies that, after Mr. Gagne agreed to take Joseph Engeran out of that suit, he immediately went to his office and wrote Joseph Engeran to that effect. In support of the statement that he had immediately written to Joseph Engeran, he refers to the suit which was filed December 8th, and the letter to Joseph Engeran, dated December 13th. In his letter to Joseph Engeran of that date. Mr. Wurzlow said he had talked the matter over with Mr. Gagne, who said he had made a mistake, regretted it, and would take Joseph Engeran's name out of the case.

In a P. S. to the letter, he says: "I will see that your name is stricken out of the petition, Monday."

Mr. Gagne admits he had a conversation with Mr. Wurzlow in front of the courthouse on the subject in question, but says, in reference thereto, that Mr. Wurzlow said to him. quoting: "Harris, Ernest will not take a judgment against Engeran if you will not take judgment against Engeran." Ernest, to whom Mr. Gagne refers, is a Mr. Dupont, representative of the Interstate Wholesale Grocer Company, for which Mr. Wurzlow had brought suit against Engeran Bros., and not Joseph Engeran.

Asked if he had agreed with Mr. Wurzlow not to take a judgment against Joseph Engeran, his answer is that he did not, and that his agreement was not to take judgment against Engeran Bros. because Mr. Wurzlow had said Mr. Dupont would not take a judgment against them.

A few days after he entered into the agreement, Mr. Gagne testifies he met Mr. Wurzlow in the clerk's office, who then told him that Mr. Dupont had insisted on confirming his default against Engeran Bros., and that he expressed his surprise that the agreement had not been carried out. He says he took his medicine and on the same date confirmed his default, which, as hereinabove shown, has brought about this litigation.

It is shown that Mr. Wurzlow the same morning also confirmed his default for the Interstate Wholesale Grocery Company, and that he was in court when the default was confirmed by Mr. Gagne against the Engeran Bros., including plaintiff herein, individually.

Mr. Gagne says, the conversation, to which we have referred, is the only one he ever had on the subject with Mr. Wurzlow with the exception of what occurred a day or two after the issuance of a writ of fi. fa. on his judgment. In reference thereto, Mr. Gagne says Mr. Wurzlow called at his daughter's house, much exercised because he had been informed of the issuance of that writ, manifested much concern, stating he would have to protect Mr. Joseph Engeran against that judgment, and asked him to withdraw the writ, with which he complied out of consideration of his friendship for Mr. Wurzlow. At that time Mr. Gagne says that Mr. Wurzlow did say that Joseph Engeran was not a member of the firm of Engeran Bros. It was then, according to his testimony, that he first received information of that fact.

The authentic deeds, hereinabove referred to, were executed by Mr. Wurzlow in the exercise of his notarial functions, and show that he, no doubt, knew that Joseph Engeran was not a partner in the firm of Engeran Bros., and he so testifies. As an attorney he knew that his client, Joseph Engeran, could not be held personally liable for the debt incurred by P. J. Engeran, or the firm of Engeran Bros., which was operating under that firm name. As he was aware of that fact, which unquestionably had been confirmed by his client, it is logical to infer that in his meeting with Mr. Gagne at the courthouse he referred thereto in making his request that the suit be dismissed as to Joseph Engeran, as it is not probable that a better ground could have been urged for the requested dismissal. If the dismissal had not been agreed to, as testified to by Mr. Wurzlow, it would seem a little singular that, in a letter written a few days thereafter, Mr. Wurzlow would have informed Mr. Joseph Engeran that Mr. Gagne had said he regretted that he had brought the suit against him, that it was a mistake on his part, and that he would "take his name out of the case," as it is therein expressed. This letter is therefore strongly corroborative of the version of the agreement given by Mr. Wurzlow.

The record shows that, when Mr. Gagne confirmed the default which included Joseph Engeran, Mr. Wurzlow was in court, had or was then confirming the default for Mr. Dupont against Engeran Bros. The attorneys for defendant point to the fact that Mr. Wurzlow did not protest against the taking of their default, although present in court.

Mr. Wurzlow's explanation is that he took no notice of the proceedings in which they were engaged in, as he had no idea that Mr. Gagne was confirming a default against his client, as he took it for granted that he would be eliminated from the suit as, he claims, it was agreed between him and Mr. Gagne.

Reference is also made by counsel to the call Mr. Wurzlow made at the home of Mr. Gagne's daughter, where it is said by Gagne that Mr. Wurzlow was much exercised upon receiving information that a fi. fa. had been issued against Mr. Joseph Engeran on the judgment obtained against him. Mr. Gagne says that Mr. Wurzlow was so much concerned on the subject that he asked him to withdraw the writ because he felt if it was executed he would be individually responsible for the judgment on account of his failure to have his client eliminated from the case.

If Mr. Wurzlow had known that Mr. Gagne was confirming his default against Mr. Joseph Engeran while he was in the courtroom at that time, as appears from the record, it seems to us that he would have then unquestionably realized that a fi. fa. would be issued on that judgment, and would have had no occasion to express his astonishment or surprise when he was informed of the issuance of the fi. fa. The fact that he expressed so much surprise at the home of Mr. Gagne's daughter indicates that he had no intimation that such a judgment had been confirmed, which confirms his evidence to the effect that he had paid no attention to the proceedings Mr. Gagne was engaged in when he took his default, as he took it for granted, under the agreement, that no such action would be taken.

In reference to the request by Mr. Wurzlow to have Mr. Gagne withdraw the writ of fi. fa., Mr. Wurzlow frankly stated that the basis thereof was, to use his own language, "because I considered I had been negligent in a way in not seeing this man (meaning plaintiff) eliminated." In the P. S. to his letter to plaintiff, Mr. Wurzlow had said that he would see that his name would be stricken out of the petition, and no doubt felt that he had not lived up to his promises, which we think accounts for the request made by him, above referred to.

In connection with the foregoing analysis of the evidence, it might not be inappropriate to add that it is hardly believable that after writing such a letter to Mr. Joseph Engeran, Mr. Wurzlow would have deliberately allowed a judgment by default to be confirmed against his client. This is possible, but not probable.

Although the petition of the plaintiff does not allege fraud or ill practice, the facts upon which it is grounded, according to its averments, bring this case under the provisions of article 607, C. P., which authorizes the annulment of a judgment for such cause or causes.

The district judge gave no reasons for his judgment, except in the decree wherein the judgment rendered in favor of the Consolidated Companies is set aside because rendered through error and fraud.

In rendering the judgment, the court evidently accepted the version of the agreement between counsel, as given by Mr. Wurzlow, due, we must conclude, to the corroborating facts to which we have referred and the explanations by Mr. Wurzlow of the request he made to have the writ withdrawn and the reasons given by him in reference to the responsibility he would have to incur for his failure to have his client's name stricken from the petition should Mr. Gagne refuse to accede to his request.

This finding involves a question of fact in which we find no error, and, if there be any, not manifest, so as to warrant a reversal.

The causes of fraud or ill practices specifically enumerated in C. P. art. 607, are merely illustrative, as has been frequently decided by our courts.

As was said in the Succession of Gilmore, 157 La. 130, 102 So. 94, 95: "The remedy given by said article to annul judgments, however, is not restrictive."

This doctrine had been recognized long before in Chinn v. First Municipality of City of New Orleans, 1 Rob. 523; Norris v. Fristoe, 3 La. Ann. 646, and in City of New Orleans v. Joseph Le Bourgeois, 50 La. Ann. page 591, 23 So. 542. In the last-cited case the court said it would grant relief when the circumstances under which the judgment is rendered show "the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable."

■ In this case it is obvious that Joseph Engeran could not be held liable for the debt of P. J. Engeran. It is also evident that he had confided his defense to Mr. Wurzlow, his attorney, and in whose hands he had left the entire management of his case. Even if the result, which culminated in a judgment against him, is attributable to a misunderstanding between the two attorneys, the judgment rendered undoubtedly "shows the deprivation of the legal rights" of plaintiff who is seeking relief herein and that the "enforcement of the judgment would be unconscientious and inequitable," as is so aptly expressed in City of New Orleans v. Le Bourgeois, 50 La. Ann. 591, 23 So. 542.

Proceeding on the same line of thought, the court, in Norris v. Fristoe, Administrator, above cited, expressed itself in different language on this subject, and in part, as follows: "Hence a case must be exhibited of matter which would make it against good conscience to execute the judgment—matter of which the injured party * * * was prevented by fraud or accident from availing himself of. The matter must also be such as the party, by the use of reasonable diligence, could not have known."

In the last-cited case it will be noted, that the court did not restrict itself to "fraud," one of the causes specified in article 607, C. P., but said relief could likewise be obtained where the party had been deprived of his defense in the former trial by "accident," and which by reasonable diligence he could not have known.

A misunderstanding between attorneys may not be literally classed as an accident, but, considered in its results as plaintiff was herein affected, we think he should obtain the same relief, where it appears, as it does here, that he could not have known of the misunderstanding by the exercise, not of reasonable, but, we will say, of the utmost diligence.

■ The fact is that our courts, from the earliest decisions, would not limit relief for the annulment of judgments to the specifically enumerated causes mentioned in article 607, C. P., but have been guided by the general principles applied by the equity courts of other states, and have invariably afforded relief where the enforcement of a judgment would be unconscientious and inequitable.

The judgment appealed from also declares that the judgment in favor of the Consolidated Companies was annulled on the ground of "error." The court gave no reasons for its finding and the "error" mentioned had reference, as we take it, to the probability of a misunderstanding between the attorneys about what was really the conditions of the agreement entered into between them.

From the long acquaintance of the court, the writer in particular, with the two counsel, we think, that a misunderstanding led to the result which brought about this litigation. Though such error caused by the misunderstanding cannot be literally characterized as an "accident," referred to in the decisions above cited, the result was, however, the same to plaintiff who happened to be the innocent victim thereof, and which he could not have averted by the exercise of the utmost diligence or vigilance, and was therefore entitled to the annulment of the judgment, as was decreed below.

For the foregoing reasons, the judgment appealed from is affirmed, with cost.

ELLIOTT, J., not participating.