This is a suit to annul and set aside a judgment in favor of plaintiff in the suit of T.J. Paul v. Sandfield Oil Gas Company, Inc., No. 11,814 on the docket of the Eleventh Judicial District Court of Sabine Parish, Louisiana, for the sum of $375, with 5% per annum interest thereon from judicial demand until paid less a credit of $75. Plaintiff here alleged that T.J. Paul took no steps in the prosecution of the suit from January 15, 1934, until June 12, 1939, and therefore allowed more than five years to elapse without taking any steps in the prosecution of said suit, therefore abandoning it.
Defendant filed exceptions of no cause and no right of action which were tried and overruled by the lower court. In answer defendant denied the allegations of plaintiff's petition except insofar as they are sustained by the court's records.
The case was submitted on the record which consists of all pleadings and the minutes of the court. The lower court rendered judgment for plaintiff as prayed for and defendant is prosecuting this appeal.
Plaintiff, appellee, has filed a motion here to dismiss the appeal. The motion is based on the following allegations of fact:
That the judgment was rendered below on February 17, 1941, at which time an order for a devolutive appeal was granted defendant, returnable to this court on or before April 1, 1941; that this appeal was not perfected and no extension of time prayed for or granted; and that on July 16, *Page 727 
1941, defendant by petition applied for and was granted a devolutive appeal which was made returnable here on August 15, 1941, which appeal was perfected.
It is appellee's contention that appellant abandoned and therefore lost his right to an appeal by failure to perfect the devolutive appeal granted him on February 17, 1941. It relies on Article 594 of the Code of Practice, which reads as follows:
"Withdrawal of appeal after citation of appellee prohibited — Abandonment. — From the moment when the citation of appeal is served on the appellee, the appellant can not withdraw his appeal; and whether the appellee obtain the rejection of the appeal by producing the record from the court below, or prosecute execution on the judgment appealed from, on the certificate of the clerk that the record has not been brought up by the appellant, the appeal shall be considered as abandoned, and the appellant shall not be afterward allowed to renew it."
Plaintiff's contention might have merit under the earlier jurisprudence of this State, to-wit: Brickell v. Conner, 10 La.Ann. 235; Jenkins v. Bonds, 3 La.Ann. 339; Sterling v. Sterling's Heirs, 35 La. Ann. 840; but under the later jurisprudence it is without merit. This court and the Supreme Court have held to the contrary, to-wit, that appellant can secure as many orders of devolutive appeal as he desires within the twelve months after judgment where he has not attempted to perfect a prior order by filing bond. The appeal cannot be perfected without filing a bond and there is no way to abandon something which has never existed. Horton v. Western Union Tel. Company, La.App., 200 So. 44; Marine Oil Company, Ltd., v. Cutler Bros. Inc., La.App., 179 So. 485; Police Jury of St. James Parish v. Borne et al., 192 La. 1041, 190 So. 124; Vacuum Oil Company v. Cockrell, 177 La. 623, 148 So. 898; Lafayette et al. v. Farr et al., 162 La. 385, 110 So. 624; Buillard v. Davis, 195 La. 684, 179 So. 273.
The motion to dismiss the appeal is therefore overruled.
Appellant seriously contends here that the lower court erred in overruling his exceptions of no cause and no right of action. He contends that the only causes for declaring a judgment a nullity are set forth in Articles 606, 607, and 608 of the Code of Practice, plus the two additional grounds added by the jurisprudence of this State, viz.: (1) That it would be against good conscience to execute the judgment sought to be annulled because the party against whom said judgment was rendered could not in the former suit have availed himself of the matter set up for nullity; and (2) that it would be against good conscience to execute the judgment sought to be declared null because the party against whom it was rendered was prevented by fraud or accident from setting up the matter relied on for nullity as a defense to the former suit.
Defendant contends that plaintiff has failed to set forth any one of the above related causes for nullity in the present suit. The articles of the Code of Practice above referred to provide as follows:
"606. Vices of form. — The vices of form for which a judgment can be annulled are the following:
"1. If a judgment has been rendered, even contradictorily, against a person disqualified by law from appearing in a suit, as a minor without the assistance of his curator or tutor, or a married woman without the authorization of her husband or of the court;
"2. If the defendant, although qualified to appear in a cause, have been condemned by default, without having been cited;
"3. When the judgment, though clothed with all the necessary formalities, has, nevertheless, been given by a judge incompetent to try the suit, either owing to the amount in dispute, or to the nature of the cause;
"4. If the defendant has not been legally cited, and has not entered appearance, joined issue, or had not a regular judgment by default taken against him."
"607. Fraud or improper practices resorted to in obtaining judgment. — A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud, or other ill practices on the part of the party in whose favor it was rendered; as if he had obtained the same by bribing the judge or the witnesses, or by producing forged documents, or by denying having received the payment of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering of the judgment."
"608. Courts in which nullity demandable. — The nullity of judgment may be demanded from the same court which has rendered the same, or from the court of appeal before *Page 728 
which the appeal from such judgment was taken, pursuant to the provisions hereafter expressed."
The courts of this State have often held that the right to annul a judgment is not restricted to the causes enumerated by the above articles of the Code of Practice and that the causes there enumerated are only illustrative. Vinton Oil Sulphur Company v. Gray, 135 La. 1049, 66 So. 357; Hanson v. Haynes, La.App., 170 So. 257; Engeran v. Consolidated Companies, Inc., La.App., 147 So. 743; Frank v. Currie, La.App., 172 So. 843; Succession of Gilmore, 157 La. 130, 102 So. 94.
In Engeran v. Consolidated Companies, Inc., supra [147 So. 746], the Court said the following:
"The fact is that our courts, from the earliest decisions, would not limit relief for the annulment of judgments to the specifically enumerated causes mentioned in article 607, C.P., but have been guided by the general principles applied by the equity courts of other states, and have invariably afforded relief where the enforcement of a judgment would be unconscientious and inequitable.
"The judgment appealed from also declares that the judgment in favor of the Consolidated Companies was annulled on the ground of `error.' The court gave no reasons for its finding and the `error' mentioned had reference, as we take it, to the probability of a misunderstanding between the attorneys about what was really the conditions of the agreement entered into between them.
"From the long acquaintance of the court, the writer in particular, with the two counsel, we think, that a misunderstanding led to the result which brought about this litigation. Though such error caused by the misunderstanding cannot be literally characterized as an `accident,' referred to in the decisions above cited, the result was, however, the same to plaintiff who happened to be the innocent victim thereof, and which he could not have averted by the exercise of the utmost diligence or vigilance, and was therefore entitled to the annulment of the judgment, as was decreed below."
In Succession of Gilmore, supra, the Court said:
"The main question submitted for consideration, under an exception of no cause of action, is whether the allegations in the petition, if taken as true, form a sufficient basis for an action of nullity under article 607 of the Code of Practice which provides that:
"`A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud or other ill practices on the part of the party in whose favor it was rendered; as if he had obtained the same by bribing the judge or the witnesses, or by producing forged documents, or by denying having received the payment of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering of the judgment.'
"It is true that said petition does not charge `fraud' or the ill practices specifically enumerated in the article of the Code of Practice above cited. The remedy given by said article to annul judgments, however, is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. Lazarus v. McGuirk, 42 La.Ann. [194], 200, 8 So. 253; City of New Orleans v. Le Bourgeois, 50 La.Ann. [591], 592, 23 So. 542.
"Courts of equity will not permit one party to take advantage of and enjoy the gains of ignorance or mistake of law by the other, which he knew of and did not correct, especially when a confidential or fiduciary relation existed between them. Pomeroy, Equity Juris., Vol. 2, pars. 847, 848, 849, 956."
However, we do not think it necessary to invoke the equity provisions of our law to sustain this suit for, in our opinion, the allegations of the petition bring it under Article 606 of the Code of Practice which provides that the judgment can be annulled if the defendant has not had a regular default taken against him. There can be no regular default taken against him unless there is a suit pending against him. It has alleged that the suit filed against it had been abandoned before default was entered. Accepting the allegation as true, as we must in passing on *Page 729 
the exceptions, he has alleged a cause and right of action enumerated in Article 606 of the Code of Practice. The exceptions were, therefore, correctly overruled by the lower court.
The admitted facts, as shown by the minutes of the court, are that T.J. Paul instituted suit against Sandfield Oil Gas Company and on January 15, 1934, a preliminary default was entered. No further action of any kind was taken by plaintiff until January 12, 1939, when the preliminary default was set aside and another preliminary default taken. On December 11, 1939, preliminary default was confirmed and judgment rendered and signed. The present suit to annul was filed July 25, 1940.
Appellant's contention on the merits of the case is that appellee here waived his rights to have suit declared abandoned by allowing judgment to be taken by default. In other words, that it was the duty of defendant in the original suit to have filed a motion to dismiss the suit for failure of prosecution for five years and in failing to do that he waived any rights he had acquired under Article 3519 of the Revised Civil Code. That Article provides as follows:
"Abandonment or discontinuance or failure to prosecute action. — Effect. — If the plaintiff in this case, after having made his demand, abandons or discontinues it, the interruption shall be considered as having never happened.
"Whenever the plaintiff having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same. (As amended, Acts 1898, No. 107.)"
The first paragraph of the Article was the original article of the Civil Code and Act 107 of 1898 amended the original Article by supplying the present second paragraph of it. Our courts have repeatedly said this amendment was for the purpose of making certain that which was prior thereto uncertain. This Article makes it certain that no action is required on the part of defendant for plaintiff to abandon his suit. The abandonment results as a legal consequence of the plaintiff's inaction in failing to prosecute his suit for a period of five years.
An early leading case interpreting the codal Article is Lockhart v. Lockhart et al., 113 La. 872, 37 So. 860. In this case the Court, after quoting the original Article and amendment, said:
"The amendment, therefore, consists of a distinct clause declaring under what circumstances a suit shall be considered abandoned. It was unnecessary to declare under what circumstances a suit should be considered discontinued, because it is commonly understood that such a result is accomplished when the plaintiff appears in court and voluntarily withdraws it; but the matter of abandonment was one of interpretation, depending upon circumstances and conduct, and subject to no fixed rule. It was therefore, as we think, the purpose of the General Assembly to substitute certainty for uncertainty, and, it being known when a suit is no longer pending in a court because of its having been discontinued, to make it known when it is no longer pending in court because of its having been abandoned.
"As the present suit falls within the terms and meaning of the statute enacted for that purpose, and as no further proceedings can be had with reference to a suit which the law declares to have been discontinued or abandoned than to strike it from the docket, there is no error in the judgment appealed from."
In Verrett v. Savoie, 174 La. 844, 141 So. 854, 855, the Supreme Court, with the Chief Justice as the organ, said:
"The reason why a suit that has been tacitly abandoned, by effect of Act No. 107 of 1898, ought to be dismissed from the docket of the court of original jurisdiction is that the right to prosecute that suit is at an end."
In Teutonia Loan Building Company v. Connolly, 133 La. 401, 63 So. 63, 64, the court said:
"As the present suit falls within the terms and meaning of the statute enacted for the purpose of determining when a suit is abandoned, and as no further proceedings can be had with reference to a suit declared to have been abandoned than to strike it from the docket, there is no error in the judgment appealed from."
In Losch v. Greco, 173 La. 223, 136 So. 572, 573, the court, again speaking through its Chief Justice, said:
"`As the present suit falls within the terms and meaning of the statute enacted *Page 730 
for the purpose of determining when a suit is abandoned, and as no further proceedings can be had with reference to a suit declared to have been abandoned than to strike it from the docket, there is no error in the judgment appealed from.'
"In Lockhart v. Lockhart, 113 La. [872], 874, 37 So. 860, it was said, after quoting articles 3518 and 3519 of the Code:
"`The amendment, therefore, consists of a distinct clause declaring under what circumstances a suit shall be considered abandoned. It was unnecessary to declare under what circumstances a suit should be considered discontinued, because it is commonly understood that such a result is accomplished when the plaintiff appears in court and voluntarily withdraws it; but the matter of abandonment was one of interpretation, depending upon circumstances and conduct, and subject to no fixed rule. It was therefore, as we think, the purpose of the General Assembly to substitute certainty for uncertainty, and, it being known when a suit is no longer pending in a court because of its having been discontinued, to make it known when it is no longer pending in court because of its having been abandoned.'
"In Charbonnet v. State Realty Company, 155 La. [1044], 1049, 99 So. 865, 867, it was said:
"`The amended article (3519 of the Civil Code), when read in connection with the subject-matter of the section and of the article 3518, immediately preceding it, clearly means that a suit which has been abandoned for nonaction during a period of five years does not constitute a legal interruption to the course of prescription, and its effect is to leave a plaintiff in the same position that he would occupy if he had not instituted the suit.'
"In other words, the abandonment which results as a legal consequence of a plaintiff's failure to take any action in his suit during a period of five years merely bars his right to continue with the prosecution of that suit. It does not prevent his bringing another suit for the same cause of action; but, if he brings another suit for the same cause of action, the question whether his right of action is barred by prescription must be determined as if no suit had been theretofore brought.
"Our conclusion is that the relator in this case is entitled to have the plaintiff's suit dismissed, as having been abandoned."
In Jones v. American Bank Trust Company, 175 La. 160,143 So. 35, the Court reaffirmed the ruling in the case of Lockhart v. Lockhart to the effect that the purpose of the amendment to the codal article by Act 107 of 1898 was to make certain that a suit was no longer pending in court because of abandonment. The cases above cited clearly hold that the abandonment takes place as a legal consequence when the plaintiff is inactive in prosecuting his case for a period of five years. No action is required on the part of defendant. The case is no longer pending in court after the five-year period if passed. If the defendant desires to have it stricken from the docket he has that right, but by failing to do so, he does not waive anything for no further action can be taken in the case.
The case of Long v. Chailan, 196 La. 380, 199 So. 222, 227, clearly reaffirms this interpretation. In that case the Court said:
"The plaintiffs in this case contend that, notwithstanding, the lapse of five years without any action being taken in the two previous suits, the suits have continued to interrupt the prescription because the record does not show that either of the motions to dismiss was served upon the plaintiffs, or was tried contradictorily. The record shows that the motions to dismiss were tried in open court. Whether it is necessary to serve such a motion upon the plaintiff in the suit, in order that the judgment of dismissal shall be final, is a matter of no importance in determining whether the interruption of prescription, which is pleaded in a subsequent suit, has lost its effect by the plaintiff's having allowed five years to elapse without taking any steps in the prosecution of the previous suit. According to the terms of the statute it is not the dismissal of the suit that causes it to lose the effect of interrupting prescription. What causes the interruption to `be considered as having never happened' is the plaintiff's allowing five years to elapse without taking any steps in the prosecution of his suit. The allowing of five years to elapse without taking any steps in the prosecution of a suit constitutes an abandonment of the suit, and the effect of the abandonment is that `the interruption (of prescription) shall he considered as having never happened.' It is not necessary for the defendant to have the suit dismissed or stricken from the docket in order that the abandonment may destroy whatever effect the suit may have had in the way of *Page 731 
interrupting prescription. When the five years of inaction on the part of the plaintiff have expired, the suit becomes as ineffectual so far as it may have interrupted prescription as if the interruption had `never happened'. Charbonnet v. State Realty Co., 155 La. 1044, 99 So. 865; Losch v. Greco, 173 La. 223,136 So. 572; Succession of Bonnette, 188 La. 297, 176 So. 397. In Losch v. Greco, supra (173 La. 223, 136 So. 573) we quoted a pertinent paragraph from the Charbonnet case, and added an expression of approval, thus:
"`In Charbonnet v. State Realty Co., 155 La. (1044), 1049, 99 So. 865, 867, it was said: "The amended article (3519 of the Civil Code), when read in connection with the subject-matter of the section and of the article 3518 immediately preceding it, clearly means that a suit which has been abandoned for nonaction during a period of five years does not constitute a legal interruption to the course of prescription, and its effect is to leave a plaintiff in the same position that he would occupy if he had not instituted the suit."
"`In other words, the abandonment which results as a legal consequence of a plaintiff's failure to take any action in his suit during a period of five years merely bars his right to continue with the prosecution of that suit. It does not prevent his bringing another suit for the same cause of action; but if he brings another suit for the same cause of action, the question whether his right of action is barred by prescription must be determined as if no suit had been theretofore brought.'
"The most important observation in the Charbonnet case and in the Losch case is that article 3519 is in that section of the Code which is entitled `Of the Causes Which Interrupt Prescription,' and that the article deals only with the subject of interruption of prescription. There is nothing said in the article about the defendant's having the right to have the suit dismissed when the plaintiff has allowed five years to elapse without taking any steps in the prosecution of the suit. It was declared in Lockhart v. Lockhart, [supra] 113 La. 872, 37 So. 860, and again in Teutonia Loan Building Company v. Connolly,133 La. 401, 63 So. 63, that the reason why the defendant had the right to have the suit dismissed at the expiration of five years of inaction on the part of the plaintiff was that plaintiff then could not take any further action in the suit unless the defendant waived the benefit of the abandonment of the suit. In the Teutonia case it was said also that the dismissing of the suit on the ground of its having been abandoned merely removed it from the docket and had nothing whatever to do with the question whether the suit had the effect of interrupting prescription."
It has been contended that Article 3519 of the Revised Civil Code, as amended by Act 107 of 1898, is placed in the Code under the title of "Prescription" or "interruption of prescription" and its only effect is in cases where the plea of prescription is raised. There is respectable authority for such a contention. This court in the case of Harrisonburg-Catahoula State Bank v. Meyers et al., La.App., 185 So. 96, held contrary to the views expressed in this opinion and definitely held that the defendant's failure to file a motion to dismiss on the ground of abandonment waived the abandonment provided for by Article 3519 of the Revised Civil Code.
The Orleans Circuit Court of Appeal in the case of Hibernia Bank Trust Company v. J.M. Dresser Company, 14 La.App. 555, 131 So. 752, also held that Article 3519 of the Revised Civil Code only gave defendant the right to have the suit dismissed as abandoned and his failure to do so constituted a waiver of the abandonment. While neither of these cases held that the Article in question only applied to interruption of prescription, it is to be inferred that was the reason for the rulings. By a divided court the Orleans Court of Appeal reaffirmed its ruling in the Dresser case in the case of King v. Illinois Central Railroad Company, La.App., 143 So. 95.
The Supreme Court of this State in Scovel v. Levy's Heirs,118 La. 982, 43 So. 642, 644, by a very much divided court, went further than either of the Courts of Appeal did in the above cases. In that case the Court said:
"Act No. 107, p. 155, of 1898, amends article 3519, Rev.Civ. Code, dealing with the interruption of prescription, and does not purport to introduce into our law an additional ground of absolute nullity of judgment."
In a concurring opinion in that same case Judge Provosty disagreed with the majority opinion wherein it held that the only application of the Article was the interruption of prescription. To our minds his reasoning *Page 732 
is unanswerable. We quote from that concurring opinion reported in 43 So. 648, 653:
"Validity of Judgment in Suit in Nullity.
"In resisting the claim for the 21/128, the defendants naturally rely upon the sale which was made by the tutor of plaintiffs to S.W. Vance in the so-called partition proceedings. In the instant suit, the plaintiffs do not undertake to show that the price of this so-called partition sale was not paid, or that the transaction was attended by fraud, or for any other reason was null or annullable; but they rely exclusively upon the judgment that was rendered in their suit in nullity, whereby the said sale was annulled. They contend that the said judgment is binding upon the defendants, because the foreclosure sales at which their authors, the First National Bank and J.H. Stephens, acquired the property, and the private sales by which the property was transferred by the purchasers to S.S. Hunter and by Hunter to the defendants, were made pending the suit in nullity, and therefore were thus made subject to whatever judgment should be rendered in said suit.
"To this, defendants reply that, while said suit was on the docket, five years were suffered to elapse without any steps being taken towards its prosecution, and that the effect of this was to cause said suit to lapse and come to an end before judgment; so that the so-called judgment which was rendered in it was so rendered in a terminated or non-existent suit, and was in consequence an absolute nullity. In support of the contention that the suit came to an end, they invoked Act 107 of 1898, p. 155, and the decision of this court in the case of Lockhart v. Lockhart, 113 La. 872, 37 So. 860. That act provides as follows:
"`Whenever the plaintiff, having made his demand, shall, at any time before obtaining final judgment, allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same.'
"And in the said case of Lockhart v. Lockhart this court held that a suit so `abandoned' was no longer a pending suit, and that no further proceedings could be had in it. That decision appears to me to be conclusive, and to be so well founded as to need no fortifying; but, in view of the division of opinion among the members of the court, I will add that to my mind it appears to be plain that, if a judicial proceeding is so infirm as to be incapable of interrupting prescription, a fortiori is it incapable of serving as a basis for judgment. No matter how imperfect a citation may be, no matter if it has issued from a court without jurisdiction, it will interrupt prescription — so long as it is a citation of some kind. But, on the other hand, in order to serve as a basis for judgment, a citation must be strictly according to law. How, then, can it be said that a citation which by the lapse of five years, without any steps having been taken in the prosecution of the suit founded on it, has lost all efficacity even for interrupting prescription, continues to be efficacious for serving as a basis for judgment. How can judgment be rendered in a suit so lifeless as not to keep alive the debt sued on?"
The jurisprudence is unanimous to the effect that defendant can by definite action on his part waive the abandonment, but it is the opinion of the majority of this court that inaction by defendant is not a waiver and that there is no definite action plaintiff can take after his five years of inaction which can be construed as a waiver on the part of defendant. To hold that when plaintiff took judgment by default after five years of inaction in prosecuting its claim, it constituted a waiver of the abandonment of the suit by defendant, would be to extend the rule that defendant by definite action can waive the abandonment to also holding that defendant must take some action to secure the abandonment. We are sure to so hold would be to place an incorrect interpretation on Article 3519 of the Revised Civil Code and would be destroying the purpose behind the enactment of the amendment (Act 107 of 1898).
The judgment of the lower court is correct and it is affirmed, with costs.
TALIAFERRO, J., concurs.
HAMITER, J., dissents. *Page 733