ELLIS, Judge.
This is an action for nullity, in which Ernest Benton, Jr., plaintiff, is seeking to have declared null a judgment rendered in favor of defendant, Royal Furniture Company of Baton Rouge, Inc.
Suit was filed by Royal against Benton and his wife, Mary Benton, on January 31, 1969. The petition alleges that Royal sold certain merchandise to Mrs. Benton, who was acting as agent for the community, fully authorized by her husband, and that, in partial payment for same, she executed a promissory note for $344.47, dated January 14, 1967, payable in installments, and providing for 8% interest after maturity and 25% attorney’s fees. It is further alleged that payments of $94.10 were made on the note, and that Ernest Benton, Jr., had ratified the purchase and debt on behalf of the community. Pursuant to the *70 prayer in the petition, judgment was rendered by default against both Benton and his wife on February 26, 1969.
Thereafter, on September 9, 1969, Royal filed a petition of garnishment against Benton, making Union Tank Car Company garnishee. After answer to interrogatories was filed by Union, judgment of garnishment was signed on September 30, 1969.
The petition for nullity was filed on September 24, 1969, asking that the judgment be declared null because obtained through fraud and ill practices, on the ground that Benton was not the maker of the note. It further prays for a preliminary injunction to stop the garnishment proceedings pending decision of the case, and for damages arising from the allegedly wrongful garnishment.
Royal filed exceptions of no cause or right of action as to both the injunction and the nullity action. The trial court, without assigning reasons, sustained the exception of no cause of action and dismissed Benton's suit. From that judgment, Benton has taken a devolutive appeal.
Article 2004 of the Code of Civil Procedure provides that “A final judgment, obtained by fraud or ill practices may be annulled.” In the case of St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3 Cir. 1965), the jurisprudence in cases such as this one is summarized as follows:
“Ordinarily judgments may not be annulled simply because the defendant did not appear and urge matters of possibly valid defense. Jourdan v. Hutton, La. App. 1 Cir., 86 So.2d 223; Vinson v. Picolo, La.App. Orl., 15 So.2d 778. Nevertheless, in instances where the defendant has a defense absolutely valid as a matter of law (which does not depend upon extrinsic evidence other than matters already of formal record), and where the parties alone are affected and the rights of no third parties have intervened, nor have the parties acted to their substantial detriment in reliance upon the judgment, the courts in several instances have held that a default judgment is subject to being nullified as unconscionable and inequitable to enforce. Gumina v. Dupas, La.App. 4 Cir., 159 So.2d 377; Tapp v. Guaranty Finance Co., La.App. 1 Cir., 158 So.2d 228, cer-tiorari denied; Sandfield Oil & Gas Co. v. Paul, La.App. 2 Cir., 7 So.2d 725. Cf. also, State ex rel. Sunseri v. Thom-an, La.App. 1 Cir., 154 So.2d 480.”
It is the position of defendant that, since his name does not appear on the promissory note sued on, he cannot, as a matter of law, be held liable thereon. He relies on R.S. 7:18, which so provides, and the case of Columbia Finance Corporation v. Robitcheck, 243 La. 1084, 150 So.2d 23 (1963). In the Robitcheck case, it was held that a holder in due course of a note, signed by a wife only, could not hold the husband thereon, even on the underlying obligation represented by the note. The following language was employed:
“While there is some authority to the contrary, we are convinced that the sounder view is that an action on the original obligation is not available to a subsequent indorsee, or remote holder, of a negotiable promissory note.
“Unlike the original creditor, a remote holder has no juridical relation to the debtor independent of the note. It makes its contract solely with the parties who 'appear on the instrument to be bound for its payment. All of the rights of such a holder arise from the negotiation of the note.
* * * * * *
“In the instant case, neither the pleadings nor evidence reflect any juridical relation between Columbia Finance Corporation and Fred Robitcheck apart from the negotiation of the promissory note. The negotiation and holding of the note form an essential basis for the plaintiff’s demand. Hence, the Negotiable Instruments Law, which governs the rights *71 and obligations arising from the transfer of such instruments, is applicable.
“LSA-R.S. 7:18 provides:
“ ‘No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name.’
“(5) The sweeping language of this section makes it clear that, with certain minor exceptions not pertinent here, only those whose signatures appear on a negotiable instrument incur any liability on it. The section is designed to make readily ascertainable the parties whose promises determine the value of the instrument.”
The court was careful to distinguish the case of Standard Manufacturing Co. v. Dupuis, 6 La.App. 476 (1 Cir. 1927), relied on by the plaintiff, on the ground that it was a suit between the original parties to the transaction.
In that case, the wife purchased a pleating machine, which was found to have been purchased for the community, and signed a note for the purchase price. The court found that the unpaid price was an obligation of the community for which the husband, as its head and master, was liable. It held that the husband was liable, “not on the note, but for it.” To the same effect is the case of Brook-Mays & Co. v. Riles, 12 La.App. 178, 125 So. 475 (2 Cir. 1929).
These cases stand for the proposition that the original creditor or payee of a promissory note, signed by the wife alone, can enforce the obligation against the community of acquets and gains if it appears that she was authorized to enter into the transaction by her husband, or if he subsequently ratified or acquiesced in her act.
Purchases made and debts contracted during the existence of the community are, as a general rule, presumed to be for the benefit of the community. Articles 2402 and 2403, Civil Code. The husband can repudiate the transactions entered into by his wife, but if he is aware of them and takes no action to set them aside, he is deemed to have ratified them. Montgomery v. Gremillion, 69 So.2d 618 (La.App. 2 Cir. 1953); Standard Manufacturing Co. v. Dupuis, supra; Article 1817, Civil Code.
We hold that in cases involving the original parties to a transaction in which the wife was acting for the community in executing a promissory note, the husband in his capacity as head and master of the community is a proper party defendant in a suit filed thereon, and as such is liable for the note. Article 735, Code of Civil Procedure.
Turning now to the judgment sought to be nullified, we find that it was rendered pursuant to a petition by the original creditor which alleges both the initial authority of the wife to bind the community, and subsequent ratification of the transaction by the husband. As pointed out above, the fact that the husband’s signature does not appear on the note does not, of itself, exempt him or the community from liability for the obligation created thereby. It follows that a husband who seeks the nullity of a judgment against him on a note signed by his wife, on the ground that he did not sign the note, has not alleged a defense absolutely valid as a matter of law and patent on the face of the record. Since plaintiff’s petition is based solely on that ground, it does not state a cause of action for nullity.
We find the exception of no cause of action was properly sustained, and the judgment appealed from is affirmed, at plaintiff’s cost.
Affirmed.