PONDER, Justice.
Mrs. Rose Perilloux Smith brought suit against Mrs. Bessie M. Adams, individually and as executrix of the successions of William E. Gause and Louise Foster Gause, seeking to annul a judgment rendered in the Civil District Court for the Parish of Orleans on October 15, 1946. The judgment sought to be annulled was rendered on confirmation of a default in a suit brought by Mrs. Adams, individually and as executrix of the successions, against Mrs. Smith wherein certain stocks and bonds were decreed to be the property of the successions. The present suit is predicated on the ground that the judgment confirming the default was secured by Mrs. Adams through fraud and ill practices. On trial in the lower court, the plaintiff’s demand was rejected and she has now appealed.
*569 Mrs. Louise Foster Gause, wife of William E. Gause, died on June '5/1943 leaving a will bequeathing 315 shares of stock in the Todd-Johnson Shipbuilding Company and 7 shares in the Suburban Building & Loan Association to Mrs. Rose Perilloux Smith, her niece, and bequeathing the residue of her estate to her husband, W. E. Gause, whom she appointed executor of her will. William E. Gause died on August 13, 1945 leaving a will bequeathing all of his property to Mrs. Bessie Mclnnis Adams, his niece, and appointing her executrix of his will. The successions were opened in St. Tammany Parish and Mrs. Adams was duly appointed dative testamentary executrix of the succession of Mrs. Gause and testamentary executrix of the succession of Mr. Gause.
A suit was brought by the executrix to set aside a purported sale of a house from Mr. Gause to Mrs. Smith which resulted in a judgment in favor of the executrix which is now on appeal in this court. The attorney for the executrix contacted Mrs. Smith with the view of obtaining a list of the stocks and bonds owned by the successions in order to include them in the inventories but failed to secure this information. Shortly thereafter, on September 20, 1945, Mrs. Smith informed the attorney for the executrix by letter that if he desired any information concerning the settlement of the estates to get in touch with her, Mrs. Smith’s, attorney. After repeated efforts to obtain a list of the stocks and bonds without avail, the attorney for the executrix had a suit instituted in Kentucky against a Mrs. David seeking to sequester all stocks and bonds in her possession belonging to the successions. He also instituted another suit in the Civil District Court for the Parish of Orleans against Mrs. Smith seeking to sequester all stocks and bonds in her possession belonging to the successions. The return on the Kentucky suit was to the effect that the stocks and bonds had been sent to Mrs. Smith and the return on the sequestration in the Civil District Court for the Parish of Orleans was to the effect that all of the stocks and bonds had been turned over to the attorney for Mrs. Smith. After repeated negotiations between the parties, the attorney for the executrix was finally presented with a list of the stocks and bonds and afforded an opportunity to inspect them. The stocks and bonds stand in the name of Mrs. Gause and are as follows: 315 shares of common stock of Todd-Johnson Dry Docks, Inc. of the par value of $1 per share; 7 shares of stock of the Suburban Building and Loan Association of the par value of $100 per share; 25 shares of capital stock of Standard Oil Company, Inc., Ky. of the par value of $10; 2 shares of stock in the Louisville Gas and Electric Company, Inc. of the par value of $25 per share; 2 income registered bonds of the Speed Building, Inc. of the face value of $1,000 each; and 2 first mortgage leasehold bonds of *571 the Majestic Realty Company of the face value of $500 each.
The attorney for Mrs. Smith endeavored to obtain a compromise with respect to the stocks and bonds and was informed by the attorney for Mrs. Adams that the only compromise that Mrs. Adams would be agreeable to would be to give Mrs. Smith the stocks and bonds bequeathed to her by Mrs. Gause although the attorney for the executrix was of the opinion that these stocks and bonds were community property. It appears from the communications that the offer of compromise was not satisfactory and that the attorney for the executrix informed the attorney for Mrs. Smith that he assumed the matter was closed. The attorney for the executrix on several occasions informed the attorney for Mrs. Smith that his client was insisting that he proceed with the suit in the civil district court and that unless something was done immediately he would so proceed. The attorney for the executrix informed Mrs. Smith’s attorney that a preliminary default was being entered in the suit in New Orleans and that contempt proceedings would be started in the suit in Kentucky. On August 8, 1946, the attorney for the executrix informed the attorney for Mrs. Smith that the preliminary default had been entered in the City of New Orleans and if Mrs. Smith would not accept the stocks and bonds bequeathed to her by Mrs. Gause as a compromise that the attorney for the executrix would proceed with the suit in New Orleans as soon as possible. On October 15, 1946 a judgment confirming the default previously entered in the civil district court was rendered. The judgment was signed on October 21st, thereafter, and on that date served on Mrs. Smith. In this judgment the succession of Mrs. Gause was recognized as the owner of an undivided one-half interest in all the stocks and bonds and the succession of W. E. Gause was recognized as the owner of an undivided one-half interest in the stocks of the Suburban Building & Loan Association and the owner of all the other stocks and bonds. Thereafter, on October 26th, the attorneys for the litigants entered into an agreement compromising and settling all matters in dispute between the executrix, Mrs. Smith and Mrs. David, which Mrs. Smith refused to accept. Mrs. Smith employed a firm of lawyers in the City of New Orleans who instituted the present suit seeking to annul the judgment rendered in the civil district court on October 15, 1946 on confirmation of default.
Counsel for the plaintiff relies on three letters to prove that the judgment of default was obtained by ill practices on the part of Mrs. Adams: a letter dated December 18, 1946 in which the attorney for the executrix stated that the default was not entered or confirmed by him; that he was not present when it was done and that he understood that the matter was handled by an attorney in New Orleans— *573 a letter dated January 29, 1947 from the attorney who represented Mrs. Smith in the first suit to the attorneys who are representing her in the present suit to the effect that he was given no notice that a judgment of default was to be confirmed; that he had discussed the matter with the attorney for the executrix with the view of a compromise which was being checked at the time the judgment was rendered; that the attorney for the executrix advised him that he had refused to have any part of the confirmation of the default and that it was confirmed by an attorney in New Orleans without his consent — a letter dated February 7, 1947 from the attorney of Mrs. Smith in the first suit to her attorneys in the present suit to the effect that when Mrs. Smith handed him the petition served on her in the first suit that he attempted to amicably compromise the- suit; that while offers were being made pro and con with the view of a compromise that Mrs. Smith brought him a copy of the judgment served on her; that he contacted the attorney 'for the - executrix and was informed that he did not take part in the confirmation of the default and would not do so without giving notice. It is stated in that letter that the writer did not dispute the word of the attorney for the executrix of his being cognizant of what was going on, but the writer insisted that he was not advised that the default, was to be confirmed.
The testimony of Mrs. Adams, who was. called for cross-examination, was to the effect that her husband was an attorney employed by the Federal Land Bank and that another attorney in the employ of that bank had confirmed the default at the request of her husband and her attorney. The testimony of Mr. and Mrs. Smith is merely to the effect that they turned the matter over to her attorney and that they knew nothing of what transpired except what transpired after the confirmation of the default. The testimony of the attorney who represented Mrs. Smith was to the effect that he was surprised when he ascertained that the default had been confirmed without giving him previous notice; that when Mrs. Smith asked him for more concrete evidence than his word as to whether he or the attorney for the executrix had any knowledge that the default was going to be confirmed that he called the attorney for the executrix and told him he was behind the eight ball because the judgment had been confirmed without his knowledge. He testified that the attorney for the executrix had informed him on a number of occasions that something would have to be done with the case and that he suggested that the executrix offer his client a compromise. He stated that he did not submit the offer of compromise made by Mrs. Adams to his client because he thought it was ridiculous. His testimony is to the effect that he did not believe that the at *575 torney would confirm the default without giving him notice.
The testimony of the attorney for the executrix is to the effect that he wrote the letter to the attorney for Mrs. Smith, after the judgment had been entered in order to assist the attorney, whom he was under the impression was on the spot with his client. The other two letters relied on by the plaintiff are predicated on this communication. He testified that he had made repeated efforts to dispose of the case and was reluctant to confirm the default on account of his personal friendship to the attorney, but his client insisted on some action being taken. The attorney in the City of New Orleans who confirmed the default did so on his and Mr. Adams’ authority and that he, the attorney for the executrix, assumes all responsibility in the matter.
While it is alleged in the petition that there was a written agreement entered into that no default would' be taken without notice being given, there is absolutely nothing in the record to support this allegation or that any such agreement was entered into between the attorneys. In the letter of February 7, 1947, from the attorney of Mrs. Smith in the first suit to the attorneys for Mrs. Smith in the present suit, we find that he informed these attorneys that it was his professional opinion that the Smiths were beaten on the merits of the case and inasmuch as it had assumed such proportion that he desired to be released from the bond he had furnished in the first suit.
From a reading of the testimony as a whole, it appears that the attorney for Mrs. Smith was delaying the suit with the view of trying to get a favorable compromise and assumed that the attorney for the executrix could not confirm the default, irrespective of his repeated warnings that his client was insisting on action being taken, because of his personal friendship to the attorney. The attorney for the executrix was continually warning the attorney for Mrs. Smith that action would be taken and he was reluctant to confirm the default. He and the husband of Mrs. Adams requested an attorney in New Orleans to confirm the default for him. The attorneys involved in the suit are highly respected in their profession and their integrity is not questioned. There is nothing in the record to show any wrong doing on the part of Mrs. Adams and the attorneys for the plaintiff do not contend that there was any wrong doing on the part of the attorney for the executrix. Their suit is based on the ground that the judgment was secured by ill practices on the part of Mrs. Adams. The record does not support any such conclusion.
Article 607 of the Code of Practice provides that a definitive judgment may be annulled where it appears that it was obtained through 'fraud or ill practices on the part of the party in whose favor it was rendered. While it has been held that *577 the causes enumerated in this article are merely illustrative and not restrictive yet there must he 'some artifice or deception used to prevent an adversary from fully exhibiting his case. There were no artifice or deception used to prevent any answer being filed in the case or to prevent the opposing -party from fully exhibiting his case. The two cases cited by the plaintiff, Lazarus v. McGuirk, 42 La.Ann. 194, 8 So. 253 and Engeran v. Consolidated Companies, Inc., La.App., 147 So. 743 are not in point because in those cases the opposing parties were led into a false security because of statements and promises made by their adversaries.
Under the rules of the Civil District Court for the Parish of Orleans no agreement between attorneys or parties to a suit will be noticed unless it be reduced to writing and filed in the record. In the present suit there was no agreement entered into by the parties either oral or written to the effect that a default would not be confirmed without first giving notice. The evidence boiled down to a simple analysis is to the effect that the attorney for Mrs. Smith assumed that such would not be done without giving him notice and shows a reluctance on the part of the other attorney after repeated warning to finally have t-he default confirmed.
Counsel for the plaintiff contends that the attorney who confirmed the default was without authority to do so because he was not made an attorney of record as required in Section 10 of Rule 6 of the Civil District Court which provides that when more than one attorney represents a litigant that one of t-he attorneys be designated as the trial attorney and that no pleading shall be filed without such designation. There was testimony offered in the record that attorneys living in the City of New Orleans had on previous occasions taken defaults and confirmed defaults for attorneys who resided outside of the city as a matter of courtesy. The attorney who confirmed the default testified that he informed the court at that time that he was acting for the attorney for the executrix who resided outside the city upon request. We know of no reason why an attorney cannot perform such functions for another attorney who resides outside the city and no authority to the contrary -has been advanced.
For the reasons assigned, the judgment is affirmed at appellant’s cost.
LE BLANC, J., takes no part.