138 So.2d 227 (1962)
Walter DIXSON
v.
John W. CARTER.
No. 208.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1962.
Rehearing Denied March 12, 1962.
Certiorari Denied April 30, 1962.
Gamble & Gamble, Harry P. Gamble, III, New Orleans, for plaintiff-appellant.
Rudolph R. Schoemann and Clifton S. Carl, New Orleans, for defendant-appellee.
McBRIDE, SAMUEL and JOHNSON, JJ.
JOHNSON, Judge.
Plaintiff Dixson obtained a judgment by default on December 2, 1959, for $450.00 *228 against defendant Carter for damages resulting in an automobile collision, which occurred on March 12, 1959. On August 9, 1960, defendant Carter appeared in the same proceedings to have that judgment annulled. On October 31, 1960, the same court rendered judgment vacating and annulling the judgment of December 2, 1959. Plaintiff Dixson has appealed.
The proceeding to annul, though brought in the original suit, is a direct action to have the original judgment declared to be a nullity. This plea alleged that after the automobile accident Dixson, on July 24, 1959, executed a complete release of defendant Carter from all liability and that said Dixson by suing and obtaining a judgment against Carter without informing the court of this release committed a fraud.
In answer to the petition to annul, the plaintiff Dixson admitted that he had signed such a release in order to enable Carter to retain his driving privilege. The document referred to is attached to defendant's petition to annul. It reads as follows:
"The State of Louisiana "Dept. of Public Safety "Financial Responsibility Div. "P.O. Box 1271 "Baton Rouge, La.
"Dear Sirs:
"I hereby release John W. Carter, 2426 Clara St., New Orleans, La. from damages suffered by me in an accident dated March 12, 1959.
"Yours very truly,
"Walter Dixon (sgd) in ink Walter Dixon."
The only testimony taken on the trial of defendant's plea was given by Carter in person. He testified that after the accident he had this document prepared in Baton Rouge and he met Dixson at his church, where Dixson signed it. Carter kept a copy and sent the release to Baton Rouge. When the original suit papers were served on Carter he went to the office of counsel for plaintiff Dixson and left a copy of the release with counsel's secretary. Within a few days, before the judgment was rendered, Carter personally contacted Dixson's lawyer and they discussed the matter, but he cannot recall that the lawyer advised him to see an attorney of his own choosing. At any rate he did go to see an attorney but Carter did not say that he employed the attorney to defend the original suit. He testified that the first he knew that Dixson had a judgment against him was "when he sent that judgment." That is the sum total of the testimony on the trial of this issue. Nothing was offered in evidence except, of course, Carter's own very brief testimony. The transcript of appeal contains the whole record of the original suit and the proceedings to annul the original judgment.
When Carter testified that the first he knew of the judgment was when "he sent that judgment," it is assumed that Carter was referring to the notice of judgment served on him on December 3, 1959, the day after the judgment was rendered. The original judgment was signed on December 8, 1959. On February 17, 1960, Dixson had issued and served on Carter a judgment debtor rule. On March 8, 1960, Dixson obtained a writ of fieri facias in execution of the judgment. A writ of garnishment was served, and the garnishee answered that Carter had been in garnishee's employ and that on that day, March 10, 1960, the employment was terminated. The garnishment resulted in collecting $11.84 of Carter's wages. On July 21, 1960, another judgment debtor rule was served on Carter returnable August 2, 1960. Carter was served with a summons to appear for questioning on that date. He failed to appear and a bench warrant issued for his arrest for failure to obey the summons. The Constable was ordered to attach and produce the body of Carter before the Court on August 9, at 10 o'clock a.m. On that day this action to annul was filed.
*229 Counsel for Carter relies upon Art. 607 of the Code of Practice which provides, in part, that a definitive judgment may be annulled where it appears that it has been obtained through fraud or other ill practice on the part of the party in whose favor it was rendered. Counsel contends that the document which Dixson signed was a voluntary release or remission of any claim which Dixson may have against Carter, and that it was a fraud upon the Court for Dixson to obtain a judgment without revealing the existence of such a release.
Counsel for Carter cites several cases on which he relies. Haley v. Badon, La.App., 98 So.2d 109, is not a suit to annul a judgment and it is not in point for the further reason that the plaintiff and the defendant executed to each other reciprocal releases, which, of course, was a contractual arrangement perfectly lawful and binding. When Haley brought the suit, Badon appeared through his attorney and defended this original suit and, on appeal, this court held that the release given Badon by Haley was a conventional remission as defined in Art. 2199 of the LSA-Civil Code. In that case the parties had appeared together before an attorney who prepared the two releases. They were dealing at arms length for the benefit of each other and the circumstances under which both parties signed the documents were altogether different from the circumstances in the present case. Here we have an action to annul a judgment which is, on the face of the record, entirely legal. No evidence is offered to show what was said or done to induce Dixson to sign the paper and it is not beyond the realm of reason to believe that he had no intention that by aiding Carter to retain his driving privileges he was giving up the right to collect the damages suffered in the automobile accident. The burden of proving such pertinent facts is on Carter. While Dixson did not testify in this proceeding to annul, his answer gave his reason and intention in signing the so-called release so as to enable Carter to retain his driver's license. If the understanding and intention were anything different it was Carter's duty to prove it. The failure of Dixson to testify does not raise any presumption against him in this matter because Dixson had recited in his answer his reasons for signing the release, and after Carter's testimony had proved nothing, there was no necessity for Dixson to testify. No one is presumed to have released a right unless it clearly appears that he intended to do so.
Counsel for Carter cites the case of Lazarus v. McGuirk, 42 La.Ann. 194, 8 So. 253. This decision does not aid Carter's position in this case. That decision announced the general rule to be that a party will not be allowed to attack a judgment in order to permit any defenses that were known and open to him at the trial, and that there is an admitted exception to that general rule in cases where the successful party has practiced fraud or deception or has done something to prevent the other party from presenting fully his facts the other party would be entitled to his day in Court.
Counsel argues that "Carter obviously thought there was going to be no judgment against him because of the release." Carter did not say anything like that. Instead, when Carter was served with the suit papers he took a copy of the release to plaintiff's attorney where he was advised that he should see a lawyer. He did see a lawyer, but he did not present any defense to the suit. He did nothing when he was examined as a judgment debtor the first time, nor later when his wages were seized and he was fired from his employment because of the garnishment. When he was arrested on a bench warrant issued because he refused to obey the court's summons, he got real busy.
It is not sacramental that we now must decide whether the so-called release would have been a good defense to the original suit. The judgment here under attack is not a nullity on the face of the record in *230 which it was rendered, as was the situation in Cilluffa v. Monreale Realty Co., 209 La. 333, 24 So.2d 606, cited by Carter's counsel, where the original judgment was an absolute nullity because it had been rendered on a confession executed by that defendant before the maturity of the debt sued on in violation of a positive prohibition contained in the Constitution of this state. LSA-Const. Art. VII, Sec. 44. In addition, the original debt had been paid in full. To have that judgment set aside at any time was a matter of right, even though the defendant did not set up the nullity until the plaintiff sued to have the judgment revived.
In order to be entitled to apply the provisions of Art. 607 of the Code of Practice, the defendant must be deprived of the knowledge of the existence of the defense relied on, or of the opportunity timely to present it, by some intentional artifice, deception, fraud or other ill practice on the part of the plaintiff. The whole atmosphere attendant upon Carter's knowledge and actions from the time he presented the release on July 24, 1959, to be signed by Dixson, brings the issue here to be decided squarely within the general rule referred to in the case of Lazarus v. McGuirk, supra. By no stretch of reasoning can this issue be brought into the exception there mentioned.
We do not now pass upon the extent or effect of the release signed by Dixson in this case. What we do say is that under the facts and circumstances in this case as here presented, plaintiff Dixson was not guilty of fraud or ill practice and that it is not against good conscience to declare the judgment legal and that plaintiff is entitled to have it executed. We say further that Carter forfeited his right and the opportunity to present a defense by his own negligence and delay. We quote the following principles of law which the courts have applied in suits to annul judgments.
Swain v. Sampson et al., 6 La.Ann. 799:
"Moreover, we consider the very question before the court decided in the case of Norris v. Fristoe, 3d [La.] Ann. 646. We there held, that to annul a judgment, a case must be exhibited of matter which would make it against good conscience to execute the judgment; matter of which the injured party could not have availed himself in the former litigation, or of which he was prevented by fraud or accident from availing himself. The matter must also be such as the party, by the use of reasonable diligence, could not have known; for, if there have been laches or negligence, that destroys the title to relief. Story's Equity Jurisprudence, § 887. Story's Equity Pleadings, § 414. Garlick v. Reece, 8 [La.] L.R. 101, McMicken v. Millaudon, 2 [La.] L.R. 180 * *".
Vinson v. Picolo, La.App., 15 So.2d 778:
"The points raised by Picolo, as the basis of his attack upon the validity of the judgment, might have been successfully pleaded in defense of the original action or may have availed Picolo on appeal, but the action of nullity cannot be used as a substitute."
Treichlingrova et al. v. Layne, 19 La. App. 71, 139 So. 659:
"The only remaining reason for annulling this judgment is the fact that the plaintiffs are dissatisfied with the amount of attorney's fees claimed by Layne, and for which the judgment was rendered on default. I do not think that the plaintiffs are in a position to annul the judgment on this ground. They knew every fact which they now know before the original judgment was rendered, and it is well settled that, in the absence of fraud, one cannot allege in nullity of a judgment that which was known and could have been used in defense of the original *231 suit, even though the judgment was on confirmation of default. It is none the less res adjudicata. Code Prac. art. 607; Succession of Lebrew, 31 La.Ann. 212; Mercantile Adjustment Co. v. Powers, 5 [La.] App. 534."
Romero v. Galley, La.App., 79 So.2d 625:
"The allegations in the second suit describing the accident contained a recitation of the defendant's version of how it happened, and alleged further that if given an opportunity to do so he could refute the testimony taken upon confirmation of the default. That can all be grouped as forming the basis of a defense and would properly have been contained in an answer. Certainly they do not set forth any reason to nullify the judgment.
* * * * * *
"We quoted from the last two cited cases in Cryer v. Cryer, La.App., 70 So. 2d 752, as well as from Adams v. Perilloux, 216 La. 566, 44 So.2d 117, 120, which states:
`"Article 607 of the Code of Practice provides that a definitive judgment may be annulled where it appears that it was obtained through fraud or ill practices on the part of the party in whose favor it was rendered. While it has been held that the causes enumerated in this article are merely illustrative and not restrictive yet there must be some artifice or deception used to prevent an adversary from fully exhibiting his case. There were no artifice or deception used to prevent any answer being filed in the case or to prevent the opposing party from fully exhibiting his case.'"
For these reasons the judgment appealed from rendered October 31, 1960, read and signed in the First City Court on November 7, 1960, vacating, annulling and setting aside the judgment of said court in favor of Walter Dixson and against John W. Carter rendered December 2, 1959, and signed December 8, 1959, be and the said judgment appealed from is reversed, and the suit of appellee for nullity of said judgment is dismissed at his costs.
Reversed.