175 So.2d 893 (1965)
Ray ST. MARY and Frankie Long St. Mary, Plaintiffs-Appellees,
v.
Mae Belle Broussard ST. MARY, Defendant-Appellant.
No. 1440.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1965.
*894 Charles C. Jaubert, Lake Charles, for defendant-appellant.
Elsie Whitman, Lake Charles, for plaintiffs-appellees.
Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
This is a suit to annul an earlier judgment on the ground that it was a fraud on the court. The suit was brought under LSA-CCP Art. 2004.[1] The defendant appeals from judgment granting the plaintiffs the relief prayed for.
The plaintiffs to this present suit are a husband, Ray St. Mary (hereinafter, "Ray") and his present wife ("Frankie"). The defendant is Ray's former wife ("Mae Belle"). This litigation revolves about efforts by Mae Belle to annul a 1951 divorce decree obtained by Ray on the ground that they had been living separate and apart for more than two years, as well as to annul a subsequent 1951 partition suit of property belonging to the Mae Belle-Ray community.
For present purposes, three different law suits between the parties are of relevance:
(1) In 1951 Ray obtained a judgment of divorce in his favor and against Mae Belle on the ground that the couple had been living separate and apart continuously since 1945.
(2) In 1961 Mae Belle sued Ray and Frankie to set aside the 1951 divorce on the ground that it was secured upon fraudulent evidence. (Allegedly, Mae Belle and Ray had cohabited in California in 1950; thus they had not been living separate and apart for the two years requisite to justify the 1951 divorce.) The suit also prayed to set aside the subsequent 1951 partition *895 sale of the couple's community property. On February 1, 1962, some nine months after suit was filed, a judgment by confirmation of default was obtained in Mae Belle's favor and against Ray and Frankie, annulling both the 1951 divorce judgment and the 1951 partition sale at which Frankie had purchased the former community's property.
(3) The present suit was filed in June, 1962 by Ray and Frankie against Mae Belle to annul the February 1962 judgment (which had annulled the 1951 divorce). In this suit, it is alleged that false evidence was used to secure the 1962 judgment (2 above) and that Ray had not visited California and cohabited with Mae Belle in August of 1950. The suit additionally alleges that Ray and Frankie relied upon a reasonable belief that they had retained an attorney to protect their rights in the 1961 annulment suit, and that they therefore had not had the opportunity to present valid defenses to it and to uphold the 1951 divorce.
For convenience in the following discussion, we will refer to the above suits respectively as Suit 1, Suit 2, and Suit 3.
In the present action (Suit 3), the trial court annulled the judgment obtained in the 1961 action (Suit 2) which in turn had annulled the divorce decree obtained in the 1951 action (Suit 1), as well as the 1951 partition of community property resulting from this latter suit. The trial court did so on the specific ground that to permit enforcement of the Suit 2 judgment would be "unconscientious and inequitable".
The trial court's scholarly and full opinion likewise, after analyzing the evidence, pointed out: (1) that it could not hold to be clearly false the testimony in Suit 2 (to the effect that Ray and Mae Belle had cohabited within two years of the 1951 divorce decree in Suit 1); (2) that likewise the failure of Ray and Frankie (defendants in Suit 2) to obtain adequate legal representation was due to neglect on their part although partly resulting from an honest misunderstanding, and not to fault or lack of adequate attention by any lawyer or other party; and (3) that the plaintiff (Mae Belle) in Suit 2 and her able and honorable counsel had not been guilty of any fraud or ill practice in taking a preliminary default and then confirming it, in the counsel's justified belief that Ray and Frankie had not retained counsel and therefore did not intend to contest the action. We may say at this point that we are in full accord with all of these factual evaluations.
Able counsel for the defendant-appellant contends most forcefully that the trial court erred in annulling the Suit 2 judgment under these circumstances. He principally points out: (a) that the judgment was annulled under LSA-CCP art. 2004, which permits judgments to be annulled only on the ground they were obtained by "fraud and ill practice", and that the trial court specifically held that fraud in the respect contended (false testimony) was not proved, especially considering the strong and conclusive evidence required to prove fraud, see Fitch v. Broussard, La.App. 3 Cir., 156 So.2d 127; and (b) absolutely no fraud or ill practice is proved or even charged on the part of the opposing party in Suit 2 who obtained the judgment, citing jurisprudence to the effect that the fraud or ill practice must be by the parties who obtained the earlier fraudulent judgment, see Adams v. Perilloux, 216 La. 566, 44 So.2d 117, and Dixson v. Carter, La.App. 4 Cir., 138 So.2d 227.
As to the latter (b) contention, this jurisprudence was based upon the specific provision to such effect of former Code of Practice (1870) Article 607. However, when the Code of Practice was replaced by the Code of Civil Procedure in 1960, the successor article 2004 of the latter enactment (quoted in full in Footnote 1 above) no longer contained the requirement that the fraud or ill practice *896 must be on the part of the party obtaining the fraudulent judgment. The omission of this requirement was deliberate and was intended to overrule jurisprudence such as is relied upon by defendant-appellant in this regard. Official Revision Comment c., LSA-CCP Art. 2004. See Sturgis v. Gulfco Finance Co., La.App. 2 Cir., 147 So.2d 782.
As to the former (or (a)) contention, under the jurisprudence the fraud which may justify annulling a judgment under LSA-CCP Art. 2004 is not only conduct which is fraudulent in the strict sense of the term. "The article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment, of some legal right, and where the enforcement of the judgment would be unconscientious and inequitable." Tapp v. Guaranty Finance Co., La.App. 1 Cir., 158 So.2d 228, 233, certiorari denied, 245 La. 640, 160 So.2d 228.
Official Revision Comment b. to LSA-CCP Art. 2004 expressly states the desire to retain the judicial discretion obtaining under the former jurisprudence "to afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable." See, e.g., Succession of Gilmore, 157 La. 130, 102 So. 94 (1924), Tapp v. Guaranty Finance Co. (1962), cited above, and Sturgis v. Gulfco Finance Co. (1962), cited above, for discussion of jurisprudence upon which this principle is based.
Particularly pertinent to the present litigation are two of the decisions referred to by Official Revision Comment b., LSA-CCP Art. 2004, as illustrative of the deprivation of legal rights such as would make enforcement of the judgment unconscionable and inequitable:
The first of these decisions, Sandfield Oil & Gas Co. v. Paul, La.App. 2 Cir., 7 So.2d 725, concerned an annulment of a judgment rendered upon confirmation of default more than five years after the last step taken in prosecution of the suit. The original defendant had not raised this defense to the judgment and had permitted the period to go by without appearing or taking any action in defense of the suit. Nevertheless, the court held the judgment subject to annulment as unconscionable to enforce because of the defendant's absolutely valid defense as a matter of law (abandonment by five years' non-prosecution) to a judgment in the suit in which the judgment was obtained. See Evans v. Hamner, 209 La. 442, 24 So.2d 814, to same effect.
The other of these decisions cited of pertinent interest, Bell v. Holdcraft, La.App. 2 Cir., 196 So. 379, set aside a judgment which had been obtained when the defendant failed to present a valid defense because of his mistaken and not unreasonable impression that he had retained an attorney to represent him, as corroborated by surrounding circumstances.
Returning to the present facts, the trial court held, and we agree, that enforcement of the judgment sought to be annulled (that in Suit 2) would be unconscionable and extremely inequitable because of the cumulation of the following factors, none of which alone possibly might have justified annulment of the Suit 2 judgment:
(1) The defendants in Suit 2, Ray and Frankie, had, as a matter of law, an absolutely valid defense to the suit, see (2) below, which was not presented to the court as a defense to the suit because of the defendants' mistaken belief that they had retained counsel to protect their interests and to notify them should further action on their part be required. Admittedly, the attorney *897 they thought they had retained was under the impression that he was not hired since Frankie had not returned to his office after leaving with him the papers and abstract, although he had requested her to return with her husband. Likewise, opposing counsel who secured the Suit 2 judgment was so informed by this attorney, and therefore proceeded to obtain the judgment some nine months after suit was filed, initially delaying action at the request of the first attorney. However, we find, as did the trial court, that the Suit 2 defendants, Ray and Frankie, colored people of little education, relied upon the assurances of a chief deputy sheriff at the courthouse who had (he thought) arranged for their legal representation in suit two; their testimony was corroborated by the deputy sheriff, who testified that he saw Frankie occasionally during the nine months and on these occasions discussed the matter with her.
(2) The defendants in Suit 2, Ray and Frankie, had a defense absolutely valid as a matter of law to the annulment judgment obtained in Suit 2:
The principal ground advanced in Suit 2 to annul the Suit 1 divorce judgment was that the latter had been obtained by false testimony that the husband Ray and the first wife Mae Belle had not lived together for more than two years, whereas in truth Ray had visited and cohabited with Mae Belle in California during August or September of 1950 (that is, that there had been a reconciliation within two years of the 1951 Suit 1 divorce action).
However, the identical allegations had been made by Mae Belle in an earlier 1953 suit (not heretofore mentioned). This 1953 action was subsequently abandoned and voluntarily dismissed by her. Suit 2, brought in 1961 to annul the 1951 Suit 1 divorce judgment, was thus on the face of the record, (in view of the identical allegations of the abandoned 1953 action) brought more than one year after Mae Belle, the Suit 2 plaintiff, had discovered the alleged fraud or ill practice vitiating the Suit 1 judgment. Therefore, under the specific terms of LSA-CCP Art. 2004, quoted in footnote 1 above, this knowledge more than one year prior to the bringing of the second annulment suit (Suit 2) was an absolute defense to the latter action. Further, the plaintiff has the burden of proving that the fraud or ill practice was discovered within the year, see Official Revision Comment  to LSA-CCP Art. 2004, and no such allegation or proof was made in this second annulment action (Suit 2).
Ordinarily judgments may not be annulled simply because the defendant did not appear and urge matters of possibly valid defense. Jourdan v. Hutton, La.App. 1 Cir., 86 So.2d 223; Vinson v. Picolo, La.App. Orl., 15 So.2d 778. Nevertheless, in instances where the defendant has a defense absolutely valid as a matter of law (which does not depend upon extrinsic evidence other than matters already of formal record), and where the parties alone are affected and the rights of no third parties have intervened, nor have the parties acted to their substantial detriment in reliance upon the judgment, the courts in several instances have held that a default judgment is subject to being nullified as unconscionable and inequitable to enforce. Gumina v. Dupas, La.App. 4 Cir., 159 So.2d 377; Tapp v. Guaranty Finance Co., La.App. 1 Cir., 158 So.2d 228, certiorari denied; Sandfield Oil & Gas Co. v. Paul, La.App. 2 Cir., 7 So.2d 725. Cf. also, State ex rel. Sunseri v. Thoman, La.App. 1 Cir., 154 So.2d 480.
The judgment in Suit 2 was itself a judgment annulling for fraud the Suit 1 divorce judgment rendered some ten years earlier. Fraud can be proved only by strong and conclusive proof, not simply by the preponderance of the evidence. Fitch v. Broussard, La.App. 3 Cir., 156 So.2d 127.
*898 The proof educed, aside from the self-serving testimony of the Suit 2 plaintiff (Mae Belle) and the vague testimony of her sister, consisted only of the testimony of a 77-year-old lady of good character who allegedly fixed the 1950 cohabitation because it coincided with a Jehovah's Witness national convention in California that year. However, in the present trial of Suit 3, it was positively proved that the California convention of the Jehovah's Witnesses had been in 1947 and not 1950. The independent aged witness admitted in the present trial below that she was mistaken as to the year of reconciliation if the Jehovah's Witness convention had not been in California in 1950. (The husband Ray had gone to California in 1947 with a Jehovah's Witness, but this reconciliation was more than two years prior to the 1951 Suit 1 Divorce action; he positively denied having done so in 1950, and the shortness of his vacation period in 1950 as proved by his employment records indicates it was improbable but not impossible that he had made the long trip by train or car and return in the short period available for the purpose.)
Therefore, in the present action to annul the Suit 2 annulment judgment, it is definitely proved that the testimony of the only independent witness in Suit 2 was mistaken to the effect that there had been a reconciliation between Ray and Mae Belle within two years of Suit 1, such as would possibly have subjected the Suit 1 divorce decree to annulment because of fraudulent testimony of a non-reconciliation for the requisite statutory two years. The Suit 2 judgment thus was at least in part based upon this crucial but false testimony.
Taking all of these factors in cumulation, without holding that any one of them by itself might have justified an annulment, we find that the trial court did not err in holding that enforcement of the judgment in Suit 2 would be unconscionable and inequitable, and that such default judgment should be annulled, where there was a defense absolutely valid as a matter of law to it which had not been urged through counsel because of the parties' mistaken and not unreasonable belief that they had retained counsel, and where the judgment was based upon testimony of a crucial nature proved without question to be false.
We should add, however, that Suit 2 (the judgment in which is annulled by the present proceedings) concerned not only annulment of a 1951 divorce decree in Suit 1 on the grounds of fraud, but also annulment of a subsequent 1951 partition sale of the Mae BelleRay community property. As to the latter or ancillary cause of action, additional grounds are urged other than the allegedly fraudulent testimony used to procure the Suit 1 divorce decree, such as that some of the property sold as community included Mae Belle's separate and paraphernal property and that Mae Belle did not receive the notice required by law of the partition sale of the property. These contentions advanced in support of the ancillary cause of action may involve the application of different legal principles and prescriptive periods than those above discussed concerning the principal demand (annulment of the divorce decree itself). We do not mean by any of the earlier observations in this opinion to foreclose the plaintiff Mae Belle from proceeding with whatever right she may have to annul the partition sale through her ancillary cause of action, since the effect of the annulling of the Suit 2 judgment by the present suit is simply to restore Suit 2 to its status prior to the annulled judgment therein.
For the reasons assigned, we affirm the judgment of the district court herein annulling the judgment dated February 1, 1962, obtained in Mae Belle Broussard St. Mary v. Ray St. Mary et al., Docket No. 52165, Fourteenth Judicial District Court; the defendant-appellant is to pay the costs of this appeal.
Affirmed.
NOTES
[1] LSA-CCP Art. 2004 provides:

"A final judgment obtained by fraud or ill practices may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."