HOOD, Judge
(dissenting).
In my opinion my conscientious colleagues have erred in their interpretation and application of the law, with the result that a serious miscarriage of justice will occur if the majority opinion is allowed to stand.
The majority has held that a default judgment rendered in 1965 should be annulled because an officer of the defendant corporation committed perjury. Under my conception of the law and evidence, this extremely harsh conclusion was reached without any legal or factual basis at all. Because of the serious, and I think unjustified, injury which will be done to that officer, and because of the undesirable and unworkable change which it will make in our jurisprudence, I think it is important that the decision of the majority be upset. There is no dispute as to the facts, but I feel that a much more detailed account of the evidence should be given for the information of the reviewing court.
As stated by the majority, on July 18, 1961, B. R. Schneider placed an order with the defendant lumber company for lumber and materials in the amount of $795.22, to be used in repairing plaintiff Brown’s home. Schneider had previously entered into a written contract with Brown for these repairs, and a copy of that contract was shown to Mr. Ralph Liles, Secretary-Treasurer of the defendant company, at the time the order was given. The majority correctly states that at the time these materials were ordered, “Schneider represented to the defendant that he zvas Brown’s agent and had Brown’s authority to purchase the materials on credit.” I might add that Schneider also specifically instructed Liles to charge the materials directly to Brown, representing that he had authority from Brown to do so. Neither plaintiff Brown nor anyone else questions the fact that Schneider made these representations to defendant.
Liles had no reason to question these representations made to him by Schneider. He had done business with Schneider on at least two prior occasions, and on each such occasion it had been with the understanding that any materials purchased by Schneider were to be charged directly to the property owner, and that he and the owner were to be personally responsible for the bill. On each of those prior occasions Schneider made the same type of representation to Liles as was made here, and on each such occasion the owner of the property confirmed the fact that Schneider had been authorized to purchase materials for his account by coming in and paying the lumber company for the materials. Actually, there is strong reason to believe that Schneider had obtained that type of authority from Brown in this instance, since Brown waited until the instant suit was filed, almost five years after the materials had been purchased, before asserting for the first time that he did not authorize Schneider to purchase the materials for him.
The majority states that “if the lumber company had sought a personal judgment against Brown at this point, it would have met with little success.” I disagree with that statement. If the lumber company had sued immediately after Schneider’s order was filled, and Liles testified as to the representations which had been made by Schneider, there can be no question but that the lumber company would have made out a prima facie case. And, in such an action, if Brown made no appearance and let the judgment be obtained by default, as *654 he did in the instant suit, the trial court certainly would have rendered judgment in favor of the plaintiff in that case, just as he did in the case which Brown now attacks.
At the time Schneider ordered these materials Liles filled out invoices, in quadruplicate, in which invoices all of the materials were listed and priced, and in each such invoice the materials were charged directly to plantiff Brown. Plaintiff alleges in his petition that these invoices “were evidently prepared at some date subsequent to the forwarding of the materials.” The undisputed evidence shows that that allegation is not true.
On July 21, 1961, the materials ordered by Schneider were put on one of defendant’s trucks and were delivered to Brown’s home in Hornbeck, Louisiana. The experienced driver of the truck determined the location of Brown’s home when he reached Hornbeck, and he took the materials to that address. He found no one at home, so he went to a neighboring house to make certain that this was the home of plaintiff Brown. After assuring himself that that was plaintiff’s residence, he unloaded the lumber and materials in the portion of Brown’s home which was being repaired, and he then placed a copy of the invoice on the materials. The copy of the invoice which was left with the materials was one of the carbon copies which was made by Liles when the materials were first ordered, and that copy plainly showed that the materials were charged to "Edward G. Brown, Route 1, Box 132, Hornbeck, Louisiana.”
Brown acknowledges that the materials were delivered to his home and that they were used in making the repairs to his home. He testified that he recalls coming home and finding some material that had been delivered to his property, and that “when the material begin to come up I could see on the packages the name of the company where it was bought.” Although he acknowledges that he found the materials in his home almost immediately after they were delivered and that he even saw the name of defendant company on the packages, he denies that he found the copy of the invoice which the driver left with those materials. Since no one was at Brown’s home when the materials were delivered, the driver left them there without obtaining a receipt for them. The next day, however, Schneider stopped by defendant’s place of business, acknowledged that the materials had been delivered to Brown as ordered, and he then signed the invoice acknowledging receipt of such materials. As I have already pointed out, Brown concedes that the materials were delivered to his residence and were used in repairing his house.
Within a few days after the materials were delivered, Liles attempted to contact Brown by telephone, primarily to suggest that in paying for the materials and repairs, he make his check out jointly to Schneider and to the defendant company. He was unable to get in touch with Brown by telephone, however, so within a few days he wrote to Brown advising him of the delivery and making the same suggestion as to payment for these materials. Brown denied that he received that letter. A few days later Liles wrote to Brown a second time, sending him an itemized copy of the invoice showing that the materials were billed directly to Brown, and suggesting again that he make his check for the repairs payable to both Schneider and the defendant company. Brown acknowledges that he received that letter and the itemized statement from defendant, although there is some conflict in the testimony as to when this second letter was sent. Liles stated that it was sent about the end of July, 1961, at the time regular bills are sent out on all accounts. Brown stated at one point that he received it about the end of August or the first of September, and at another time he said he received an itemized statement from defendant “way long in August,” but after Brown had talked to Liles by telephone. As will be pointed out later, the *655 ■telephone conversation between Brown and Riles took place after Brown had been informed by letter and statement of the fact that the materials had been charged to him. In any event, according to Brown’s •own statement he received a letter and an itemized statement from the defendant company at least by the first of September, 1961, and there can be no question but that at that time he knew that South Street Lumber Company had charged the materials to him and was looking to him to pay the account.
Brown testified that the first information he had that the materials had been charged to him and that defendant was expecting him to pay for them was when he received the above mentioned letter and itemized statement. He stated, however, that he had paid Schneider for all of the materials and labor about two or three weeks before he received that letter and statement.
Shortly after receiving the last mentioned letter, Brown called and talked to Liles by long distance telephone, and he advised Liles at that time that he had already paid .Schneider and that “he should look to Mr. Schneider for his money.” Liles at that time again made it clear to Brown that the •defendant was looking to Brown to pay for the materials. Although I have searched the record carefully, I have been unable to find any evidence whatsoever, including Brown’s own testimony, which indicates that Brown ever informed Liles or the defendant company prior to the time the instant suit was filed that Schneider had not been authorized by Brown to purchase the materials for and to charge them to the account of Brown. It is true that Brown testified at the trial that he had not .authorized Schneider to do that, but he •made no such assertion to defendant before the instant suit was filed.
On September 13, 1961, the defendant filed a materialman’s lien in the mortgage records of Sabine Parish, and attached to :this lien is a statement of the materials which were furnished by the defendant. The affidavit evidencing the lien recites that Schneider, as the contractor, is indebted to defendant for these materials because they were furnished “at the request of and with the approval of said B. R. Schneider.” At the top of the lien, it is shown that the indebtedness was owed by “B. R. Schneider, Contractor and Edward G. Brown, Owner.” And, the invoice or statement which is attached to the lien specifically recites that the materials were charged to “B. R. Schneider, Contractor and Edward G. Brown, Owner, Route 1, Box 132, Hornbeck, Louisiana.”
Brown testified that after this lien was filed he took “the documents” to Mr. Boone, an attorney, and discussed the matter with him, but he says he doesn’t remember the advice which was given to him by that attorney. After receiving this advice, however, Brown apparently decided not to resist the claim which was being made against him by the lumber company. Instead, he endeavored to locate Schneider because he said he “would have recourse against him.”
Thereafter the defendant sent a number of statements to Brown for the amount due, and it wrote letters to him demanding payment. The attorneys for the lumber company also made formal demands on Brown for payment, and Brown went to the office of the lumber company’s attorney on at least two occasions to discuss the matter with him. The demands made against Brown were without avail, and finally the lumber company instituted suit against Schneider and Brown on October 13, 1963, almost fifteen months after the materials had been delivered. The lien, of course, had expired by that time.
In the suit which was filed, the company alleged that Schneider and Brown were liable, in solido, for the materials which were purchased. And, it further alleged:
“Petitioner furnished the aforesaid materials and supplies upon the request of both Defendants, B. R. Schneider and Edward G. Brown, and upon the agree *656 ment of both defendants to pay and assume responsibility for payment thereof.”
Personal service was made on Brown on October 20, 1962, but Schneider could not be located or served with process. Brown did' not file an answer or make an appearance in the suit, and finally the company obtained a default judgment against him on July 2, 1965. More than two years and eight months elapsed between the time personal service was made on Brown and the time the default judgment was obtained. During that entire time repeated demands for payment were made on Brown, he was fully informed as to the nature of the claim, he knew that Schneider had represented to Liles that he had authority to obligate Brown and that the lumber company was relying on that representation, he had obtained legal advice even before the suit was filed, and there was nothing which prevented him from answering.
When the matter came up for confirmation of default, the plaintiff lumber company filed in evidence an affidavit of the correctness of the account, which was signed by Liles, as an officer of the company. That affidavit constituted prima facie proof of the indebtedness as provided in LSA-C.C.P. art. 1702. The affidavit is dated June 29, 1965, and the entire body of that document reads as follows:
“That Edward G. Brown is justly and legally indebted to South Street Lumber Company, Inc. for the sum of Seven Hundred Ninety Five and 22/100 Dollars ($795.22) on an account for the purchase and delivery of building materials and supplies; that Edward G. Brown arranged with B. R. Schneider to make certain repairs and improvements on the dwelling house and property of Edward G. Brown in Sabine Parish, Louisiana; that, through the said B. R. Schneider, the said Edward G. Brown purchased the building materials and supplies required for the repairs and improvements from South Street Lumber Company, Inci, Lake Charles, Louisiana; that officials of South Street Lumber Company, Inc. communicated and made clear that the supplies and materials were to be sold and delivered on the account of Edward G. Brown and him alone; that the said building materials and supplies were sold and delivered to the said Edward G. Brown at his residence at Route 1, Box 132, Hornbeck, Louisiana, as evidenced by photo-copies of invoices dated July 18 and 19, 1961, which are true and correct copies of the originals, which invoices were mailed to Edward G. Brown, and contain correct detailed statements of the supplies and materials delivered to the said Edward G. Brown; that the annexed typewritten statement of the account truly and correctly lists and itemizes each of the aforesaid invoices and correctly shows the amounts due and unpaid.
“Appearer further deposed that amicable demands for payment of the account have been made upon the said Edward G. Brown as evidenced by the annexed copies of correspondence, which are true file copies of the originals which were mailed to Edward G. Brown, and are made a part hereof; but the said Edward G. Brown has not paid the amount due.
“The amount claimed is owed, past due and unpaid.”
Attached to the affidavit, and also filed in evidence, are two itemized statements, of the account, one of which is a photocopy of the original invoice prepared by Liles when the materials were ordered, and the other was a copy of the invoice or statement which was attached to the material-man’s lien. Copies of both of the statements had been furnished to Brown more than two and one-half years before they were offered in evidence. Also attached to the affidavit and filed in evidence are copies of three letters making formal demand on Brown for payment of the account, these letters having been written on March *657 23, June 16 and on July 12, 1962. On the basis of this evidence the trial judge rendered a default judgment in favor of plaintiff and against Brown for the amount claimed.
A formal notice of the rendering of that judgment was mailed to Brown on July 7, 1965, and he does not deny receiving that notice. Brown, nevertheless, allowed the delays for applying for a new trial and for appealing to elapse without seeking any such relief. Finally, and long after the delays for appealing had elapsed, Brown instituted this suit on January 20, 1966, seeking to set aside the default judgment which had been rendered against him on the grounds that it was obtained by fraud and ill practice.
The majority concedes that there was no “fraud or ill practice” prior to the time the default judgment was obtained on July 2, 1965. It holds, however, that statements contained in the affidavit which was filed in evidence on that date contained perjured statements, and it is the use of that affidavit which it holds constituted fraud and ill practice. More specifically, the majority has held that “the defendant’s representations to the court by sworn affidavit that B. R. Schneider was the authorized agent of the plaintiff when in fact he was not, and the assertion (according to the ordinary English meaning of the words of the affidavit) that Mr. Brown was contacted in advance of the sale to Mr. Schneider, constitute sufficient ‘ill practice’ to uphold the trial judge’s determination that the judgment be annulled.” I very strongly disagree with the majority on both of these conclusions.
Insofar as the first conclusion is concerned, the affidavit recites that “through the said B. R. Schneider, Edward Brown purchased the building materials and supplies for the repairs on his home.” The majority holds that that is a perjured statement because the defendant represented “that B. R.' Schneider was the authorized agent of the plaintiff when in fact he was not.” The uncontradicted evidence shows, and the majority agrees, that the official of the defendant company who received the order for the materials was specifically informed at that time that Schneider was the authorized agent of Brown. The defendant had no reason to question that information, but on the contrary it had good reason to accept and to believe it. In filing suit against Brown, the lumber company specifically alleged the facts which were represented to it by Schneider and which are stated in the affidavit. The company obviously anticipated that Schneider would be served, and that he would be available to testify at the trial. There can be no question but that it expected to prove the agency relationship by Schneider’s testimony. If the company did not put Schneider on the stand, it knew that Brown could do so. If Brown had filed an answer before the default was confirmed raising an issue as to whether Schneider had authority to obligate him for the materials, then the lumber company may have succeeded in locating Schneider and in obtaining his testimony for the trial. Since no issue was raised as to that point, however, it was not necessary for the company to attempt to locate Schneider or to do anything more than to make out a prima facie case. The last sentence in the affidavit, in itself, was sufficient to make out a prima facie case for the company.
The issue in this case is not whether Brown actually authorized Schneider to buy the materials for his account. The issue presented here is whether Liles perjured himself in stating that through Schneider, the materials were purchased for Brown. The evidence shows that Schneider did purchase the materials for Brown. It also establishes that defendant had good, sound proof of the fact that an agency relationship existed between Brown and Schneider. It had good reason and a right to rely on the representations which had been made to one of its officers, and Liles *658 was in the utmost good faith in making the statement contained in the affidavit. The question of whether Schneider actually was authorized by Brown to buy the supplies is one which should have been raised as a defense on the merits of the original suit. The issue here is whether Liles deliberately and knowingly committed perjury for the purpose of deceiving the court and depriving Brown of his legal rights. I think the majority is patently in error in concluding that the statement made by Liles is not true.
The affidavit also recites "that officials of the South Street Lumber Company com-nmnicated and made clear that the siopplies and materials were to be sold and delivered on the account of Edward Brown and him alone.” The majority has held that that statement is false because defendant did not communicate personally with Brown before Schneider ordered the materials. The actual holding of the majority is that "the assertion (according to the ordinary English meaning of the words of the affidavit) that Mr. Brown was contacted in advance of the sale to Mr. Schneider” constituted ill practice. The affidavit contains no statement to the effect that the lumber company contacted Brown at all, and certainly there is nothing in the affidavit which can be construed as stating that Brown had been contacted "in advance of the sale to Mr. Schneider.”
The statements made in the affidavit to the effect that defendant “communicated and made clear” that the supplies were sold to Brown are completely true and are supported by the evidence in this case. Officials of the defendant company communicated that fact and made it clear in several ways: (1) Liles communicated and.made clear to Schneider at the time the materials were purchased that they were to be charged to Brown’s account. Although Brown now denies that Schneider was authorized to purchase the materials for him, he.cannot deny .that Schneider had been engaged by him to repair his home. In view, of this contractual relationship between Brown and Schneider and other existing facts, Liles *<had the right to assume that this information would be and was conveyed to Brown by Schneider, before or at the time the materials were delivered. In any event, however, the statement contained in the affidavit is completely true even though .the evidence shows only that Liles communicated and made clear to Schneider that the materials were sold on the account of Brown. (2) When the materials were delivered to Brown’s home, written information was left with those materials which made it clear to Brown that they were being billed to him and him alone. The company had the right to assume that Brown would find and receive this written information when he found and received the materials. Brown concedes that he found the materials almost immediately after they were delivered. He denies, of course, that he found the written invoice which was with the materials. In my opinion, however, that denial does not justify a conclusion that the invoice was not there, or that the company official gave perjured testimony in stating that by leaving this invoice with the materials in Brown’s home he communicated and made clear that Brown was being charged for these materials. (3) Letters were written by the defendant to Brown within a few days after the materials were delivered, and Brown acknowledges receipt of at least one of those letters, together with an itemized statement of the account. Brown also acknowledges that the information stated in the affidavit was communicated and made clear to him at that time. (4) In a telephone conversation which occurred within six weeks after the delivery of materials Liles again communicated and made clear to Brown, personally, that the account was being charged to his account. (5) Brown was informed by letters from the defendant’s attorneys of the fact that the materials had been charged to his account and that he was responsible for them. (6) Brown obtained legal advice from counsel of his own choice and he talked to the . company’s attorney at least twice, and on *659 those occasions it again was made clear that he was being held responsible. (7) A mate-rialman’s lien, and a statement attached to that lien, made it clear to Brown that the materials were charged to him. This lien was filed within two months after the delivery was made. (8) A suit was filed against Brown in 1962, in which suit the lumber company specifically alleged all of the facts. Brown was personally served with a copy of the petition two years and eight months before the affidavit here in question was executed or used. The petition filed in that suit, and the annexed documents, again made it clear to Brown that the materials had been sold to him, through Schneider, and that they had been charged to his account.
The evidence shows beyond any question, therefore, that the defendant did exactly what was recited in the affidavit. It “communicated and made clear that the supplies were to be sold and delivered on the account of Edward Brown and him alone”.
Our jurisprudence is established to the effect that fraud can be proved only by strong and conclusive proof and not simply by the preponderance of evidence. In Fitch v. Broussard, 156 So.2d 127 (La.App. 3d Cir. 1963), we said:
“ * * * ‘One who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced * * *. It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence * * Todt v. Todt, 237 La. 168, 110 So.2d 566, 570-571.”
In the instant suit I feel that the majority has erred seriously in holding that there was fraud or ill practice on the part of the defendant lumber company.
There are other reasons, in addition to those already stated, why I feel that the majority has erred. LSA-C.C.P. art. 2004 provides that “a final judgment obtained by fraud or ill practices may be annulled.” This provision has been interpreted as being broad enough to afford such relief “when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable.” Official Revision Comment b. to LSA-C.C.P. art. 2004; St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3d Cir. 1965).
In the instant suit the litigant was not deprived of any of his legal rights, and the enforcement of the judgment would not be unconscientious and inequitable. Brown was fully aware of his legal rights, he was allowed almost three years within which to assert a defense, and the defense which he had (consisting of his own testimony and that of his wife) was available and known to him during that entire time. Instead of asserting that defense, however, Brown elected to wait until all of the delays for answering, for applying for a new trial or for appealing had expired, and until prescription had run on the open account, and then he filed this action in which he actually seeks to assert the same defense which had been available to him at all times since the suit was originally filed.
Although the jurisprudence in Louisiana is more liberal than that of most other states in permitting a judgment to be annulled on the grounds of fraud and ill practice, I do not think it was ever intended that courts should go as far as the majority has gone here. If the majority opinion stands as a precedent, it will wipe out all of our laws relating to the delays and grounds for obtaining a new trial, and the delays and bonds required for appeals. It will mean *660 simply that a litigant may obtain a new trial at any time within a year after a judgment has been rendered merely by alleging that he has a defense which he theretofore had neglected to assert.
The majority relies on the case of St. Mary v. St. Mary, supra. In that case the defendants had been deprived of their legal right to present a defense because of their mistaken belief that they had retained counsel and that he had filed the necessary pleadings to protect their interest, when in fact that was not true. It was clear that in that case the defendants not only were deprived of their legal rights, but that it also would have been unconscientious and inequitable to enforce the judgment. That, however, is not true in the instant suit.
The facts in the instant suit are similar to those in Jourdan v. Hutton, 86 So.2d 223 (La.App. 1st Cir. 1956). In that case, as in this one, the defendant was aware of the claim against him and he neglected to file an answer, with the result that default judgment was obtained against him. He sought to annul the judgment on the ground of fraud or ill practice, alleging grounds which are considerably more meritorious than those alleged in the instant suit. The The trial judge rejected plaintiff’s demand, however, even though he observed that if the same evidence had been before him in the original suit he would not have rendered judgment in favor of the plaintiff. In affirming the decree of the trial court, our brothers of the First Circuit said:
“We feel that the petitioner was duly notified of the action pending against him, and we can find no cause for avoiding the judgment at this late date. Furthermore, defendant’s counsel testified on trial that she had written petitioner several letters in an attempt to collect on said suit without the necessity of reducing same to judgment after the appellate court’s decision. The facts, as a whole indicate that petitioner was aware, or should have been aware, of what was going on, and we are unable to find any error in the judgment below.”
In Dixson v. Carter, 138 So.2d 227 (La. App. 4th Cir. 1962, cert. denied), plaintiff obtained’a default judgment against defendant, and in doing so he did not reveal to the court that he previously had executed a release of any claim which he had against that defendant. Defendant later sued to annul the judgment on the ground that the judgment had been obtained through fraud or ill practice. The trial judge rendered judgment annulling the former decree. Our brothers of the Fourth Circuit reversed the decision, holding that the defendant in the original suit had had an opportunity to present his defense and he had failed to do so. In so holding the court said:
“In order to be entitled to apply the provisions of Art. 607 of the Code of Practice, the defendant must be deprived of the knowledge of the existence of the defense relied on, or of the opportunity timely to present it, by some intentional artifice, deception, fraud or other ill practice on the part of the plaintiff.1’
I think the rule applied in the last two cited cases is logical and fair and is the rule which should be applied here. If it is not applied here, then it will be difficult to say when there will ever be an end to litigation in any case.
In the instant suit Brown actually is seeking to obtain a new trial, after all of the delays for answering, applying for a new trial and for appealing have expired, in order that he may present the same defense which he could have presented immediately after the original suit was filed. His position is set out clearly by his counsel as follows:
“It is the position of the writer, and of Mr. Brown, that the issue in this case is a very, very simple one. If under the actual facts of the case South Street Lumber Company is entitled to a personal judgment against Mr. Brown then the *661 judgment as rendered, should stand. If, on the other hand, the actual facts of the case are such that a personal judgment ■could not be awarded South Street Lumber Company against Mr. Brown, then the judgment which was awarded, although awarded on default, must have 'been procured through fraud and/or ill practice, for accepting this as true, if the true facts had been sworn to, then the ■Court could not, under the law, or in good ■conscience, have given judgment in any amount against Mr. Brown. This, in essence, was the exact holding of the District Court.”
If Brown had timely applied for a new trial on exactly the same grounds which 'he has alleged in this suit, and he had taken the same position as is set out in his counsel’s brief, I feel that under our existing law his application would have been denied. In Bond v. City of Baton Rouge, 129 So.2d 887 (La.App. 1st Cir. 1961, cert. denied), ..an application for a new trial was held to have been properly denied because the proposed new evidence would have been “readily discoverable upon the exercise of due -diligence.” The court said:
“It is elementary that the law does not favor a multiplicity of litigation and that a litigant having been afforded a day in court will not be granted a second opportunity in the absence of good and compelling reasons.”
In Strobel v. Schlegel, 145 So.2d 664 (La.App. 4th Cir. 1962, cert. denied), the court 'held that the appellant had properly been denied a new trial because he had failed to use diligence in procuring the new evi-dence which he sought to introduce. Quoting from the Supreme Court in Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955), the court said:
“For a new trial to be granted on the ground of newly discovered evidence, the party praying for it must show clearly that he discovered this evidence after the • trial, and that he used every effort and all diligence in his power to timely procure the necessary evidence, and, if his vigilance is in doubt, his application must fail. See Art. 560, La.Code Pr.; Berger v. Spalding, 13 La.Ann. 580.”
Since Brown clearly would not be entitled to a new trial, under our law, on the ground urged here, I cannot agree that he is entitled to an annulment of the judgment.
In the event the majority opinion is eventually allowed to stand, then I assume that it will necessarily follow that if the lumber company locates Schneider within the next year, and obtains his testimony to the effect that Brown did authorize him to make the purchase for Brown’s account, then the company may sue Brown under LSA-C.C.P. art. 2004 to annul the judgment which is now being affirmed by the majority, on the ground that Brown gave perjured testimony and thus the judgment of annulment was obtained by fraud and ill practice. And, if the company should be successful in that action, Brown may institute another annulment suit later, and thus there would be no end to the litigation.
In the leading case of United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878), the United States Attorney instituted an action to annul a judgment on the ground of fraud, the alleged fraud consisting of perjury and the fraudulent use of a simulated and false document. The United States Supreme Court refused to annul the judgment, and in so holding used the following pertinent language which I think is applicable here:
“Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; *662 or where the attorney regularly employed corruptly sells out his client’s interest to the other side- — these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.”
“The genuineness and validity of the 'concession from Micheltorena produced by complainant was the single question pending before the Board of Commissioners and the district court for four years. It was the thing and the only thing that was controverted, and it was essential to the decree. To overrule the demurrer to this bill would be to retry, twenty years after the decision of these tribunals, the very matter which they tried on the ground of fraud. If we can do this now, some other court may he called on tzventy years hence to retry the same matter on another allegation of fraudulent combination in this suit to defeat the ends of justice; and so the number of suits would be without limit and the litigation endless about the single question of the validity of this document(Emphasis added.)
The Supreme Court of Utah, in Rice v. Rice, 117 Utah 27, 212 P.2d 685 (1949), said, “In this case we accept the universal and salutary rule that judgments must be sustained; that they cannot for anything but the most compelling reasons be set aside, and that extrinsic fraud must be the basis for such an attack * * * That perjury is intrinsic fraud and not therefore the basis of setting aside a judgment is well recognized.”
In Heathman v. Vant, 172 Cal.App.2d 639, 343 P.2d 104 (Dist.Ct. of App., Cal., 1959), the court rejected defendant’s demand that a judgment be annulled on the grounds that it was obtained by fraud, that is by perjured testimony. And one of the reasons assigned by the court was:
“Defendant had full opportunity to come in and contest the action. There was no inhibition against his personal presence in the action. He had knowledge of its pendency. He had the benefit of independent legal advice. He had a lawyer who made the so-called appearance for him. He was not kept in ignorance of the proceedings, as he now asserts. So far as appears, he had sufficient funds to enable him to travel. Instead of acting with diligence, he waited nearly five years after lie had been divorced and until Evelyn had died before becoming conscious he had been defrauded.”
I think the rules applied in the above cited cases should be applied here. If they are not applied in the instant suit, and the majority opinion is allowed to stand as a precedent, then the result may well be that there will be no end to litigation in any case.
I think the statements made by Liles in the affidavit are absolutely true and are supported by the evidence. I also am convinced that, regardless of the interpretation which the majority has placed on the statements in the affidavit, Brown is not entitled to have the judgment rendered in the original suit annulled under the facts presented here.
I know that my colleagues are sincere and are genuinely conscientious in the conclusions which they have reached, but I feel that they have erred.
For these reasons, I respectfully dissent.
On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.